In re BLACK & GEDDES, INC., Debtor.

Chester B. SALOMON, as Trustee of the Estate of Black & Geddes, Inc., Debtor, Plaintiff,

v.

Cory LUZAR, individually and d/b/a Ari Services, Defendants.

Bankruptcy No. 81 B 10399 (PBA).

Adv. No. 82–5520–A.

United States Bankruptcy Court, S.D. New York.

Dec. 14, 1982.

---

Chester B. Salomon, P.C., New York City, for trustee; Cindy E. Tzerman, of counsel.

Nicholas A. Bucur, Jr., Cleveland, Ohio, for Cory Luzar.

## DECISION ON PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMAND FOR TRIAL BY JURY

PRUDENCE B. ABRAM, Bankruptcy Judge.

On April 13, 1982, Chester B. Salomon, as Trustee of the Estate of Black and Geddes, Inc. (the "Trustee") in this case under Chapter 7 of the Bankruptcy Code,[1] commenced an adversary proceeding against Cory Luzar, individually and d/b/a ARI Services ("Luzar"). Prior to the time an answer was due and before any answer was filed, on April 26, 1982, the Trustee filed an amended complaint. The original and amended complaints are identical except that the Trustee has increased the amount sought. On May 12, 1982, Luzar filed an answer to the amended complaint on which was endorsed a demand for trial by jury. The Trustee has moved to strike that demand.

The basis of the amended complaint may be simply stated: the Trustee asserts that Luzar was paid monies in the aggregate amount of $13,875.25 by Black & Geddes during the period February 1977 to January 1981 purportedly on account of secretarial services but that in fact no secretarial services or other benefit was furnished by Luzar to Black & Geddes. There are four counts to the amended complaint. The first seeks recovery on the grounds that the debtor did not receive fair consideration for the payments and that they may be avoided as fraudulent conveyances under § 544(b)[2] of the Bankruptcy Code; count two seeks to avoid the payments as fraudulent conveyances, also under § 544(b), on the grounds that the property remaining in the debtor's hands was an unreasonably small capital; and count three seeks to avoid the payments as fraudulent conveyances under § 544(b) on the grounds that the debtor knew or should have known that it would incur debts beyond its ability to pay such debts as they matured. Count four seeks to avoid payments during the period February 23, 1980 to February 23, 1981 totalling $5,600.50 under § 548(a)(2) of the Bankruptcy Code on the grounds that they were transfers for which the debtor received less than a reasonably equivalent value and thus fraudulent conveyances. The prayer for relief is as follows:

> "WHEREFORE, plaintiff respectfully prays for judgment against defendant as follows:
>
> (a) On the FIRST, SECOND AND THIRD Claims for Relief, $13,875.25 plus appropriate interest.
>
> (b) On the FOURTH Claim for Relief, $5,600.50 plus appropriate interest.
>
> (c) The costs and disbursements of this adversary proceeding.
>
> (d) Such other and further relief as is just."[3]

For the reasons discussed below the Court is of the opinion that a jury trial was properly demanded by Luzar.

---

1. This case was originally commenced on February 23, 1981 as a Chapter 11 reorganization and was converted on May 27, 1981 to a Chapter 7 liquidation.

2. Section 544(b) of the Bankruptcy Code incorporates state law. Whether this case would be governed by the law of Ohio or New York is unclear but no pertinent distinctions have been urged on this motion.

3. Although not material to the outcome of the jury trial issue, the Court is unclear, but believes, that count four is duplicative in amount of counts one, two and three and merely seeks recovery on an alternative theory.

■ Section 241(a) of the Bankruptcy Reform Act, 28 U.S.C. § 1480(a), must be the starting point for resolving the jury trial demand question. That section provides in pertinent part as follows:

"... this Chapter and Title 11 do not affect any right to trial by jury, in a case under Title 11 or in a proceeding arising under Title 11 or arising in or related to a case under Title 11, that is provided by any statute in effect on September 30, 1979."

The Court construes this section as requiring it to provide a trial by jury upon proper request in any adversary proceeding which could not have been brought (absent consent) in the bankruptcy court before the enactment of the Bankruptcy Reform Act, if a trial by jury would have been available in a non-bankruptcy federal court action, but perhaps only if the action could have been commenced in such court, or if it would have been available in the state court. Other courts seem to have also approached construction of this section in this way as well. See, e.g., *In re Portage Associates,* 16 B.R. 445 (Bkrtcy.N.D.Ohio 1982); *In re Fleming,* 8 B.R. 746 (D.C.N.D.1980); and *In re Hause,* 10 B.R. 628 (Bkrtcy.D. Mass.1981).

This adversary proceeding seeks relief of a type against a defendant of a type (i.e., non-consenting) that would have required commencement of an action in state or federal court had it been brought under the former Bankruptcy Act. A determination of the right to a trial by jury in federal district court requires the application of a three-pronged test. The test requires that the court determine

"first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries." *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).

The third test need not detain us as this case is not so complex or difficult as to be beyond the practical abilities of a jury. The second prong too requires little comment. The complaint seeks in the prayer for relief exclusively a legal remedy, money damages.[4]

The first test, the pre-merger custom with respect to such questions, is the key here. The Court must look to whether this fraudulent conveyance action would have been prior to the merger of the law and equity sides in the federal courts, triable on the law side or the equity side. That inquiry requires a determination of the custom of the common law of England at the time the Constitution was adopted as any right to a trial by jury here derives from the Seventh Amendment to the United States Constitution.

This Court has reviewed the numerous cases cited by both sides in their briefs. It is generally the case, as the Trustee contends, that fraudulent conveyance actions have been held to be equitable in nature, and thus no right to trial by jury would exist. The most accurate recent statement of the law seems to be that in *In re Hause,* 10 B.R. 628, 629 (Bkrtcy.D.Mass.1981): "It has been held uniformly that there is no right to a jury trial in a fraudulent conveyance action brought in federal court seeking as the primary relief an equitable remedy." No equitable remedy is sought in this case; this is not a fraudulent conveyance action in which the relief is the imposition of a constructive trust on monies, which would fall on the equity side, nor does the complaint seek a complex accounting. Rather, the complaint sounds in terms of money had and received, and as such is an action at law in which a trial by jury can be had and is the exception to the general rule that fraudulent conveyance actions are equitable actions.

Garrard Glenn in Section 98 of his great treatise *Fraudulent Conveyances and Pref-*

---

4. Moreover, it does not appear that the complaint could properly be restated in constructive trust terms or the prayer for relief to an equitable one. The money paid to Luzar appears to have been paid on a number of occasions over a period of time and long since dissipated.

erences (1940) considers the precise question of whether an action such as this is at law or in equity.

"As previously said, the trustee's position with respect to a fraudulent conveyance is that the transfer was void and hence the property is an asset of the estate. If it is not within the trustee's possession, however, then he must recover the property, or its value, by a plenary suit.* * *

"It follows that whether the trustee's suit should be at law or in equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and *if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in the English courts of long ago.* If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.

"The difficulty, however, was that the Federal courts of four Circuits allowed the trustee to sue in equity as a matter of course, in all cases of fraudulent conveyance or preference, without inquiry as to whether the plaintiff had an adequate remedy at law. The proposition was quite unsound, as was shown by the decision in other Circuits; but happily the dispute has been settled by the [United States] Supreme Court [in *Schoenthal v. Irving Trust Co.,* 267 [287] U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932) on certiorari from the Second Circuit]." *Supra* at 183–184. (Emphasis added, footnotes deleted).

■ The *Schoenthal* case, although it deals with recovery of a preference by a trustee under the former Bankruptcy Act, is regarded by this Court as mandating a trial by jury as demanded in this case. The adoption of the Bankruptcy Reform Act of 1978 has no impact on this conclusion. The Supreme Court held in *Schoenthal* that:

"The question whether remedy must be by action at law or may be pursued in equity notwithstanding objection by defendant depends upon the facts stated in the bill. And, in absence of a clear showing that a court of law lacks capacity to give the relief which the allegations show plaintiff entitled to have, a suit in equity cannot be maintained. * * * The preferences sued for were money payments of ascertained and definite amounts. The bill discloses no facts that call for an accounting or other equitable relief. It is clear that there may be had at law's remedy as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.'" 287 U.S. at 95, 53 S.Ct. at 51.

See also *Allen v. Gray,* 201 N.Y. 504, 94 N.E. 652 (1915); *Lewinson v. Hobart Service Trust Co.,* 49 F.2d 356 (D.N.J.1931); and 4 Collier on Bankruptcy (14th Ed.), ¶ 67.47[3].

Brief mention will be made of some of the recent cases which have been cited as requiring the conclusion that this is an equity action. In *In re Fleming,* 8 B.R. 746 (D.C.N.D.Ga.1980), on the basis of the relief sought, the court found that the trustee's action to recover a fraudulent conveyance sounded in equity and cites with approval the *Schoenthal* case. 8 B.R. at 749. Likewise a suit to recover fraudulently conveyed real property involving numerous transfers, to establish that certain entities were *alter egos* of the debtor and to obtain a complex accounting was found to be an equitable action after careful consideration of each aspect of the three-prong *Ross v. Berhard* test, *Towers v. Titus,* 5 B.R. 786 (D.C.N.D. Cal.1979). In *In re Checkmate Stereo & Electronics Ltd.,* 21 B.R. 402 (D.C.E.D.N.Y. 1982), a trustee's action to recover fraudulent conveyances even though it included an incidental demand for a money judgment was found to be equitable and the monetary relief found to be an integral part of the equitable relief sought. All of these cases are distinguishable on their facts at bar and none of them mandate a finding that this is

an equitable action. Nor does the Court find the general statement of the Second Circuit in its opinion in *Damsky v. Zavatt*, 289 F.2d 46 (2d Cir.1961) to the effect that fraudulent conveyance actions have long been cognizable in equity to control the facts here in light of the Supreme Court's clear holding in *Schoenthal*. The *Schoenthal* case was cited by the Supreme Court itself with approval in *Katchen v. Landy*, 382, U.S. 323, 327–328, 86 S.Ct. 467, 471–472, 15 L.Ed.2d 391 (1966).

The Trustee's motion to strike the demand for trial by jury is denied.

SO ORDERED.