**In re O.P.M. LEASING SERVICES, INC., Debtor.**

**James P. HASSETT, as Trustee of O.P.M. Leasing Services, Inc., Plaintiff-Appellee,**

v.

**Herbert WEISSMAN and Fundways, Ltd., Defendants-Appellants.**

84 Civ. 1334 (JFK).

United States District Court, S.D. New York.

April 10, 1985.

Jeffrey D. Buss, New York City, for defendants-appellants.

Richard S. Toder, Larry D. Henin, Zalkin, Rodin & Goodman, New York City, for plaintiff-appellee.

KEENAN, District Judge.

This is an appeal from a decision of the United States Bankruptcy Court for the Southern District of New York, Lifland, B.J., dated December 9, 1983, 35 B.R. 854. In his decision, the Bankruptcy Judge denied appellant's motion which sought, *inter alia,* (1) a jury trial in an adversary proceeding commenced by the Trustee of O.P.M. Leasing Services, Inc. ("Trustee") against the appellants in the Bankruptcy Court ("Adversary Proceeding"), and (2) permission to file a late proofs of claim in the O.P.M. Leasing Services, Inc. ("OPM") reorganization proceeding under Chapter 11 of the Bankruptcy Code.[1] For the reasons stated below, we reverse the Bankruptcy Court's decision on the issue of appellants' right to a jury trial and affirm on the issue of the filing of late proofs of claim.

## BACKGROUND

OPM is engaged in the business of buying, selling and leasing new and used computers and related equipment. On March 11, 1981, OPM filed a voluntary petition for reorganization under Chapter 11 of the Code. On March 27, 1981, James P. Hassett was appointed reorganization trustee of OPM. In a complaint filed March 3, 1983 in the Bankruptcy Court, the Trustee asserts claims, under Bankruptcy Code §§ 544, 548 and 550 and the New York Debtor-Creditor Law § 270 *et seq.,* against Herbert Weissman ("Weissman") and Fundways, Ltd. ("Fundways"). OPM allegedly made fraudulent conveyances to Weissman and Fundways. The Trustee seeks judgment against Weissman for $599,062.42 and against Fundways for $266,562.45.

Shortly thereafter, the Trustee, in view of the uncertainty of the Bankruptcy

---

1. On January 16, 1984, Judge Haight granted leave to appeal these two interlocutory rulings.

Court's jurisdiction after *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), commenced a similar action against appellants in the United States District Court for the Southern District of New York. That action is currently on the suspense docket, 83 Civ. 1917 (GLG).

On June 3, 1983, appellants filed their answers to the complaints filed in the Bankruptcy Court and District Court actions. Appellants also filed a separate demand for a jury trial in the District Court action. Although no similar demand was made to the Bankruptcy Court, a copy of the District Court jury demand was sent to the Bankruptcy Court. On the same day, appellants moved for an order, pursuant to Rule 9015 of the Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") and Rule I(d)(1)(D) of Emergency Bankruptcy Rule I of the Southern District of New York ("Emergency Rule"), either dismissing the Bankruptcy Court action for lack of subject matter jurisdiction or transferring it to the District Court for a jury trial. On July 13, 1983, appellants moved for an order, pursuant to Bankruptcy Rule 9006(b), permitting the late filing of their proofs of claim in the OPM Chapter 11 case.

In denying appellants' motion to dismiss or transfer the action to the District Court for a jury trial, Judge Lifland ruled (1) that the Trustee's claims were equitable, rather than legal, in nature, thus not requiring a jury trial, 35 B.R. at 860–61; and (2) that even if a jury trial was required, appellants had waived their right thereto, *id.* at 860. Judge Lifland also ruled that appellants were not entitled to file late proofs of claim against the Trustee because they had failed to prove that their neglect in making a timely filing was excusable. *Id.* at 864–67.

## DISCUSSION

### A. *Right to a Jury Trial*

#### 1. *Nature of the Claim*

A determination of the right to a jury trial requires the consideration of three factors: (1) the custom with reference to the issue in dispute prior to the merger of law and equity in the federal system, (2) the nature of the remedy sought, and (3) the practical abilities and limitations of juries. *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).

■ The second factor is clear. The Trustee alleges that Weissman and Fundways fraudulently received certain monies. (Complaint ¶¶ 6, 8). The only relief sought by the Trustee is money damages, $599,- 062.42 from Mr. Weissman and $266,562.45 from Fundways (*Id.* ¶¶ 13, 16, 19, 22, 26, 31, 34, 37, 40, 44, 48). As such, it is a classic example of an action at law, entitling appellants to a jury trial. *See In Re Huey,* 23 B.R. 804, 804 (Bkrtcy.Cal.1982); *cf. Damsky v. Zavatt,* 289 F.2d 46, 48–52 (2d Cir.1961) (where complaint sought a money judgment and nothing more, even though it was for taxes, there is a right to a jury trial).

The third prong too needs little discussion. This case is not so detailed or confusing as to preclude the use of a jury. *Cf. Towers v. Titus,* 5 B.R. 786, 796–97 (N.D. Cal.1979) (where plaintiff sought injunction, reconveyance of real property, an equitable lien, and a constructive trust amidst confusing factual and legal issues, no jury trial provided).

The first prong, the pre-merger custom with respect to the issues in dispute, presents the most difficulty. As Bankruptcy Judge Abram has explained, the Court must look to whether the particular fraudulent conveyance action at issue would, prior to the merger of law and equity, have been tried in a court of law or a court of equity. *In re Black & Geddes, Inc.,* 25 B.R. 278, 280 (Bkrtcy.S.D.N.Y.1982). Since the right to a trial by jury must emanate from the Seventh Amendment to the United States Constitution, this inquiry requires a determination of the common law customs in England at the time the Constitution was

adopted. *Id.* As Judge Friendly has said, "the Seventh Amendment ... 'is derived from history' ... and we must turn to history to give it content and meaning." *Damsky,* 289 F.2d at 48 (quoting *Green v. United States,* 355 U.S. 184, 199, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957)).

Historically, fraudulent conveyance actions were equitable in nature. *Damsky,* 289 F.2d at 53. It is from this general proposition that Judge Lifland, in the decision below, determined that the instant action was equitable. The cases cited below, however, primarily involved the quest for equitable relief. *See In re Checkmate Stereo & Electronics,* 21 B.R. 402, 409 (E.D.N.Y.1982) (reconveyance of stocks and merchandise and money damages as an alternative remedy); *In re Hause,* 10 B.R. 628, 629 (Bkrtcy.D.Mass.1981) (reconveyance of real property and money damages as alternative remedy), *aff'd,* 694 F.2d 861 (1st Cir.1982); *Towers,* 5 B.R. at 791–92 (reconveyance of real property, constructive trust and equitable lien); *In re Fleming,* 8 B.R. 746, 749 (N.D.Ga.1980) (injunctive relief, constructive trust, reconveyance of some real and personal property and money damages as an alternative remedy); *Hyde Properties v. McCoy,* 507 F.2d 301, 306 (6th Cir.1974) (annul conveyance of title to property in court's possession in interpleader action).[2]

Judge Lifland attempted to come within the general rule by framing the Trustee's action as one that seeks to recover "assets," rather than damages, which were allegedly misappropriated by appellants from the OPM estate. The Judge maintained that the demand for money damages is merely an "integral part of the equitable relief" sought. 35 B.R. at 861. As such, he found that the Seventh Amendment does not require jury trials for claims, such as those against appellants, which are pri-

marily equitable. *Id.* (citing *In re Fleming,* 8 B.R. at 750). Judge Lifland, however, failed to describe any underlying equitable claim of which money damages is an integral part.

In fact, the Trustee in the instant case seeks no equitable relief. He seeks no imposition of a constructive trust or a complex accounting. He prays only for money damages, that money he alleges was fraudulently conveyed to appellants. Thus, the relief sought is legal rather than equitable and therefore this case falls within an exception to the general rule that fraudulent conveyance actions are suits in equity. *E.g., Black & Geddes,* 25 B.R. at 280; *In re Huey,* 23 B.R. at 804; *cf. In re Hause,* 10 B.R. at 629 ("there is no right to a jury trial in a fraudulent conveyance action brought in federal court seeking as the primary relief an equitable remedy").

The question of whether an action such as this is equitable or legal was addressed in Garrard Glenn's landmark treatise entitled "Fraudulent Conveyances and Preferences":

> ... [w]hether the trustee's suit should be at law or in equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.

2. Judge Lifland relied on *Katchen v. Landy,* 382 U.S. 323, 337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) for the general proposition that "in bankruptcy proceedings the right to a jury trial need not apply." 35 B.R. at 860. *Katchen* involved a party that had consented to summary jurisdiction. Appellants, however, have not consented to such jurisdiction. Nor do we find *Katchen* to

mean that there is no right to a jury trial in bankruptcy actions. Indeed, the Supreme Court provided for jury trials under Bankruptcy Rule 9015 in 1983. A broad reading of *Katchen* would render this provision meaningless and this Court declines to find that the Supreme Court would promulgate meaningless rules.

G. Glenn, Fraudulent Conveyances and Preferences § 98 (1940). According to Glenn, until 1932, federal courts often allowed trustees to sue in equity as a matter of course without scrutinizing the complaints to distinguish between those seeking the return of money and those seeking the return of chattel. *Id.* Indeed, this is exactly the error made by the court below. ■ In 1932, however, the Supreme Court settled the issue in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). The Court held:

> The question whether remedy must be by action at law or may be pursued in equity notwithstanding objection by defendant depends upon the facts stated in the bill. And, in absence of a clear showing that a court of law lacks capacity to give the relief which the allegations show plaintiff entitled to have, a suit in equity cannot be maintained. * * * The preferences sued for were money payments of ascertained and definite amounts. The bill discloses no facts that call for an accounting or other equitable relief. It is clear that there may be had at law "a remedy as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity."

*Id.* at 95, 53 S.Ct. at 51 (quoting *Boyce's Executors v. Grundy*, 3 Pet. 210, 215, 7 L.Ed. 655). In view of *Schoenthal*, the Court finds that appellants have the right to a trial by jury in this case. The Court would also note that all ambiguities should be resolved in favor of providing a jury trial. *See Ross*, 396 U.S. at 542, 90 S.Ct. at 740 (although derivative suits are historically equitable, the Seventh Amendment entitles parties to a jury trial on corporation's underlying claim to recover commissions); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 471–72, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962) (rule permitting consolidation of legal and equitable claims cannot be allowed to destroy a party's right to trial by jury of the legal claims); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959) (court's discretion to deprive party of right to a jury trial on legal claims through prior determination of equitable claims is very narrowly limited and must, wherever possible, be exercised to preserve jury trial). Accordingly, the Court finds that appellants have the right to a jury trial in this case.

### 2. *Waiver of the Right to a Jury Trial*

Although appellants may have had a right to a jury trial, there is an issue as to whether they waived that right by failing to file a demand for a jury trial in the Bankruptcy Court. Appellants justify their failure to file by pointing to the confusion in the law during the relevant time period. Some background is necessary.

In *Marathon*, the Supreme Court held that Congress could not constitutionally invest the bankruptcy courts, as non-Article III courts, with the power to hear a case involving a state law claim extraneous to the bankruptcy action and to issue a final judgment therein. 458 U.S. at 87, 102 S.Ct. at 2879. In so holding, the Court struck down on separability grounds the entire grant of jurisdiction over bankruptcy matters to the bankruptcy court. *Id.* On December 21, 1982, three days before the effective date of *Marathon*, the Board of Judges for the Southern District of New York adopted Emergency Bankruptcy Rule I, delegating authority to bankruptcy courts consistent with *Marathon*. These rules have been upheld by the Second Circuit. *In re Kaiser*, 722 F.2d 1574, 1578–80 (2d Cir.1983). In April, 1983 the Supreme Court transmitted proposed bankruptcy rules to Congress pursuant to 28 U.S.C. § 2075. With one exception not relevant here, Congress did not act on these rules and they became effective on August 1, 1983. These rules too have been upheld by the Second Circuit. *Kaiser*, 722 F.2d at 1579.

The Emergency Rules and the Bankruptcy Rules differ in one significant respect. The drafters of the Emergency Rules, being careful not to run afoul of *Marathon*, decided not to vest bankruptcy judges with the power to conduct trials. Emergency Rule (d)(1)(D). The rules promulgated by

the Supreme Court, however, *do* authorize bankruptcy judges to conduct jury trials. Bankruptcy Rule 9015. It is fair to assume the Supreme Court would not have drafted this rule if jury trials in bankruptcy courts were unconstitutional. *See Kaiser,* 722 F.2d at 1579.

When appellants filed their answer on June 3, 1983, the Emergency Rules were the only ones in effect. They filed a jury demand in the district court action. But, thinking quite correctly that the Bankruptcy Court did not have the authority to conduct jury trials, they did not file a jury demand in the Bankruptcy Court.

Judge Lifland, in his decision below, found that appellants waived their right to a jury trial by not making a demand in Bankruptcy Court. 35 B.R. at 859–60. He recognized that the Emergency Rules were in conflict with the new Bankruptcy Rules, but that the new rules must prevail on matters of procedure. *Id.* at 860 (citing *In re Morrissey,* 717 F.2d 100, 105 (3d Cir. 1983)). Judge Lifland's decision, issued on December 9, 1983, several months after the new Bankruptcy Rules became effective, found that Bankruptcy Rule 9015(c) governed the issue of proper procedure regarding the jury demand. Rule 9015(c) mandates waiver of the right to a jury trial if a timely demand is not made. He stated:

> ... Bankruptcy rule 9015 is viable and enforceable, and defendants could have made a jury demand to this Court. A jury demand, if timely made and appropriate to the cause of action, serves only to establish a procedural rerouting from the Bankruptcy Court to the District Court.

*Id.* at 860. The Court does not agree with this analysis to the extent it serves to deprive appellants of their right to a jury trial.

■ The Court rejects the idea that the procedural requirements of the new Bankruptcy Rules compel a finding that appellants waived their right to a jury trial by not filing a demand with the Bankruptcy Court. The new Bankruptcy Rules were adopted after appellants answered. While the demand requirement may be procedural in nature, the right to trial by jury is substantive. The court below applied a procedural rule retroactively to deprive appellants of their fundamental right to a jury trial. This Court cannot uphold such a ruling when a constitutional right is at stake.

The case relied on below, *Morrissey,* involved a conflict between temporary rules and the new Bankruptcy Rules regarding the standard of review of a bankruptcy judge's findings of fact. 717 F.2d at 104–05. In this case, there is no conflict. The Emergency Rules controlled when the appellants would have had to make their jury demand in the bankruptcy court. In addition, the instant case does not involve the standard of review; it concerns a constitutional right.

Appellants filed a copy of their District Court jury demand with the Bankruptcy Court. As we said, the District Court and Bankruptcy Court actions are identical. By so filing, they apprised the Bankruptcy Court and the Trustee of their desire for a jury trial. Thus, a finding of waiver is not required. *See In re Checkmate Stereo & Electronics, Ltd,* 21 B.R. 402, 407 (Bkrtcy. E.D.N.Y.1982). The rules on demand and waiver "should be fairly applied." *Id.* at 407. When the parties and court have been adequately notified of the jury demand, as in the instant case, the Court can properly find that no waiver has occurred.

Perhaps appellants, recognizing that the law was in flux, would have been safer making a jury demand on the Bankruptcy Court despite the prevailing rules. But any error on their part was made in good faith, prior to adoption of the new rules, and this Court finds it proper to resolve all doubts in favor of granting a jury trial. Accordingly, the Court finds that appellants have properly preserved their right to a jury trial.

### 3. *Location of Jury Trial*

Having found that appellants have a properly preserved right to a jury trial, the next question is whether the trial should be

held in the Bankruptcy Court or the District Court. Appellants contend that the new Bankruptcy Rules do not authorize bankruptcy courts to conduct jury trials because they conflict with the Emergency Rules barring jury trials in bankruptcy courts. We disagree.

■ Preliminarily, the Court notes that this case is clearly a matter amenable to issuance of a final judgment by a Bankruptcy Court. *Marathon* provided that a bankruptcy judge could not enter a final judgment in a "related proceeding." 458 U.S. at 92, 102 S.Ct. at 2882. *Marathon* involved a state law claim for breach of contract independent of federal bankruptcy laws. *See Kaiser*, 722 F.2d at 1582. This, however, is an action for damages resulting from a fraudulent conveyance. This action is inextricably tied to the creation of the estate in bankruptcy for the benefit of OPM's creditors; there would be no cause of action without the federal bankruptcy statutes that authorize it. *See id.* Thus, the instant action is not, like the action in *Marathon,* a related proceeding. Consequently, the Bankruptcy Court has the power to issue a final judgment in this case.

Regarding the alleged conflict between the Emergency Rules and the new Bankruptcy Rules, we think none exists. The Emergency Rules expired either on August 1, 1983 (if the new Bankruptcy Rules, having not been disapproved by Congress and becoming effective that day, can be liberally called legislation) or more likely on March 31, 1984—such is the unambiguous language of Emergency Bankruptcy Rule I(a). Whether the Bankruptcy Court had the power to conduct a jury trial at some time in the past, when the Bankruptcy Rules and the Emergency Rules were arguably in conflict, is irrelevant. The critical question is whether the Bankruptcy Court has the power to conduct a jury trial today.

Under Bankruptcy Rule 9015 there is no question that a bankruptcy court has the authority to conduct a jury trial. Accordingly, we remand this case back to Judge Lifland with directions to conduct a jury trial at a time that he may deem just and proper.

### 3. *Late Filing of Proof of Claim*

Appellants seek permission to file late proofs of claim alleging that OPM is indebted to them for commissions on equipment leased from OPM by Rockwell International and for the development and use of a leased property depreciation insurance policy. OPM filed its petition in bankruptcy on March 11, 1981. Weissman and Fundways were not listed by OPM in the petition as creditors. On January 11, 1982, Judge Lifland issued an order ("bar order") establishing the deadline for filing proof of claims as March 30, 1982. In addition, Judge Lifland gave the Trustee until October 3, 1983 to file a list of creditors, schedule of assets and statement of financial affairs pursuant to 11 U.S.C. § 1106(a)(2). In March 1983, appellants were served with a summons and complaint by the Trustee. On July 13, 1983, they moved for permission to file a late proofs of claim.

Appellants contend that they should be permitted to file late proof of claims because (1) their neglect in filing was excusable, and (2) the Bankruptcy Court's decision setting the bar date prior to the date schedules were due contravened 11 U.S.C. § 1111(a).

#### 1. *Excusable Neglect*

■ Bankruptcy Rule 9006 (former Bankruptcy Rule 906(b)) authorizes the court, in its discretion, to grant extensions on filing deadlines (after the deadline has passed) when the applicant's failure to act was the result of "excusable neglect." Excusable neglect is present when a party fails to meet an obligation due to "unique or extraordinary" circumstances, *Maryland Casualty Co. v. Conner*, 382 F.2d 13, 17 (10th Cir.1967), "which [are] beyond the reasonable control" of the delinquent party, *In re Manning*, 4 B.C.D. 304, 305 (Bkrtcy.D.Conn.1978). The party seeking the extension has the burden in this regard. *In re Horvath*, 20 B.R. 962, 966 (Bkrtcy.S. D.N.Y.1982). Three factors are considered in determining whether there is excusable

neglect warranting relief: (i) the adequacy of the notice provided, (ii) the source of the delay, and (iii) the prejudice, if any, that will inure to the debtor should the objection be allowed. *Id.* at 966–67; *In re Heyward,* 15 B.R. 629, 636 (Bkrtcy.E.D.N.Y.1981).

■ First, the Court finds that notice of the bar date to appellants was adequate. On January 11, 1982, notice of the bar date was served by mail on all creditors listed in OPM's Chapter 11 petition. Concededly, appellants received no notice by mail since they were not listed in OPM's petition. Notice of the bar date, however, was also published in the *Wall Street Journal* (national edition), *Datamation,* and *Computer World.* Appellants, relying on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), argue that due process requires notice that is reasonably calculated to inform a party of the pendency of an action. The Court agrees, but finds that notice by publication is an adequate form of notice to advise a party of the entry of a bar order. *In re GAC Corp.,* 681 F.2d 1295, 1300 (11th Cir.1982); *In re Weis Securities, Inc.,* 411 F.Supp. 194, 195 (S.D.N.Y.1975); *In re Int'l Coins & Currency, Inc.,* 22 B.R. 123, 125 (Bkrtcy.D.Vt.1982). In fact, as Judge Lifland aptly pointed out, appellants' counsel conceded that "[i]t would be reasonable to expect" that his clients would read the publications in which notice was published. 35 B.R. at 865.

■ When notice by mail is possible, it is surely preferable to notice by publication. However, when a trustee has no actual knowledge of a claim or the name and address of the claimant, it is not possible to give notice by mail. The Court accepts Judge Lifland's finding that appellants failed to demonstrate the requisite actual knowledge on the part of the Trustee. *Id.* Thus, the Court finds that notice by publication in this case was consistent with the requirements of due process.

Second, with regard to the source of delay, appellants allege their delay is attributable to their lack of notice and the fact that appellants were not familiar with OPM's Chapter 11 proceedings. As discussed above, notice of the bar date by publication was adequate. Furthermore, we agree with Judge Lifland's finding that appellants' contention that they were unfamiliar with OPM's Chapter 11 proceeding strains credulity. *Id.* Appellant Weissman is the brother of OPM's former President, Mordecai Weissman, and he has been involved in numerous business transactions with OPM. *See Kaiser,* 722 F.2d at 1583 (transfer of property by the debtor to a close family member can be a "badge of fraud"). In fact, appellant Weissman is a former employee of OPM. *Id.* Under all the circumstances, Judge Lifland properly concluded that appellants failed to demonstrate that they lacked control or knowledge of the OPM reorganization such that they could not have filed their proofs of claim in timely fashion. *Id.* at 866–67.

■ Third, Judge Lifland found that permitting late filing of appellants' proofs of claim would prejudice the OPM estate, and those creditors for whose benefit it was organized. *Id.* at 867. Again, we agree with his findings. It is generally improvident to grant permission to file late proofs of claim, *In re Young,* 1 B.R. 387, 390 (Bkrtcy.M.D.Tenn.1979), and this case is no exception to that general rule.[3]

■ In sum, the Court finds that appellants have failed to meet their burden of demonstrating "unique or extraordinary" circumstances "beyond their control" that justify their filing proof of claims sixteen months after publication of notice of the bar date and fourteen months after the bar date.

### 2. *Propriety of Filing Sequence*

■ Appellants argue that the drafters of the Bankruptcy Code envisioned a sequence of events whereby a debtor or trus-

**3.** The Court would note that appellants had actual notice of the bar date in April 1983, yet they neglected to file a claim for another two and one half months without explanation.

tee would first file the list of creditors, schedule of assets and liabilities, and a statement of the debtor's financial affairs. Then, those creditors whose claims are unlisted, or listed as disputed, contingent, or unliquidated as to amount would, upon notice, file proofs of claim. After reviewing the legislative history of 11 U.S.C. §§ 501(a), 1111(a), *see* S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787, the Court agrees that this is certainly the scheme contemplated by Congress.

Appellants next contention, however, that Judge Lifland's decision to alter the usual sequence warrants an order by this Court allowing a late filing of appellants' proofs of claim, is erroneous. Under Rule 3001(b)(3) of the Interim Rules of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, adopted by the Bankruptcy Court for the Southern District of New York on February 20, 1980, a bankruptcy judge has the authority to establish a bar date. *See In re GAC Corp.*, 681 F.2d at 1299; *see, e.g., In re Keyboards America, Inc.*, 30 B.R. 349, 350 (Bkrtcy.E.D.Va.1983). Undoubtedly, Judge Lifland issued this order and rearranged the usual sequence of events under Chapter 11 because he considered it the most prudent, efficient and just method of administering OPM's complex reorganization proceedings.

Absent a finding of injustice or prejudice, we see no reason to rule that modification of the intended sequence is unlawful or warrants the granting of exceptions. Appellants have failed to allege any specific prejudice resulting from the modification.[4]

Any prejudice suffered by appellants can be traced to their failure to file proof of claims in a timely fashion. Accordingly, the Court finds that Judge Lifland's decision to alter the usual sequence of filings does not warrant granting appellants permission to file late proofs of claim.

## CONCLUSION

This Court reverses the Bankruptcy Court's determination that appellants have no right to a jury trial. The claims against them are such that appellants are entitled to a jury trial and we find that in failing to file a demand for a jury trial in the Bankruptcy Court, at a time when the Bankruptcy Court had no authority to conduct a jury trial, appellants did not waive their right to a jury trial. We remand this case to the Bankruptcy Court for a jury trial pursuant to new Bankruptcy Rule 9015, which now authorizes Bankruptcy Courts to conduct jury trials.

We affirm the Bankruptcy Court's ruling denying appellants permission to file late proofs of claim against the OPM estate. Appellants failed to demonstrate excusable neglect or any other reasons justifying the allowance of late filing of proofs of claim.

SO ORDERED.

---

4. Conceivably, a party could be prejudiced if it did not file a proof of claim because it was under the impression that it would be named as a creditor as to an undisputed amount in the debtor's schedule of liabilities. A party named as creditor as to an undisputed amount need not file a proof of claim under 11 U.S.C. § 501. *See id.* § 1111. Thus, if the bankruptcy judge set the bar date prior to the time the schedule of creditors was due, a party that thought it would be so listed and was not listed could be prejudiced since it would then be too late to file a proof of claim. Even if appellants fall within this narrow category, the Court finds they were not justified in believing they would be listed since they were not on the original list of creditors filed along with the bankruptcy petition. The Court also finds it difficult to believe that appellants, whom Judge Lifland found were familiar with OPM's bankruptcy proceeding and had received constructive notice of the bar date, 35 B.R. at 865–67, a finding which this Court has accepted, see *supra* at p. 831, would not— had they been acting in good faith—have protected their rights by filing timely proofs of claim.