In re ADAMS, BROWNING & BATES, LTD., Debtor.

Dorothy EISENBERG, Trustee, Estate of Adams, Browning & Bates, Ltd., Plaintiff,

v.

GUARDIAN GROUP, INC., Richard Pinto and Harry Nichols, Defendants.

Bankruptcy No. 882–81192.
Adv. No. 883–0728.

United States Bankruptcy Court, E.D. New York.

Feb. 25, 1987.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., by Marc A. Pergament, Garden City, N.Y., for trustee.

Pinks, Brooks, Stern & Arbeit by Steven G. Pinks, Hauppauge, N.Y., for Harry Nichols.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

What this Court must now determine is whether the defendant's request for a jury trial must be respected and, if so, in what court, the district court or the bankruptcy court, such trial is to take place.

This adversary proceeding was commenced on September 9, 1983, at a time when bankruptcy proceedings in this District were governed by the Emergency Resolution entitled "In Re Jurisdiction of Bankruptcy Courts" (the "Emergency Rule")[1] issued by Chief Judge Jack B. Weinstein. The complaint seeks money damages for preferential payments and fraudulent conveyances to, or for, the benefit of the defendants. No equitable relief is requested. The preferences and fraudulent conveyances are alleged to have violated 11 U.S.C. §§ 547, 548(a)(1), 548(a)(2), and the New York Debtor and Creditor Law. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1471 and the Emergency Rule.

The defendant Guardian Group, Inc. ("Guardian"), is a corporation, which was engaged in the same collection work as the debtor, shared offices with the debtor, and had overlapping personnel. The two individual defendants, Richard Pinto and Harry Nichols, are alleged to be officers and stockholders of the corporate defendant.

The trustee alleges that Nichols and Pinto transferred clients, assets and property

---

**1.** The text of the Emergency Rule was promulgated by the Judicial Conference. It is reproduced in 1 Collier on Bankruptcy ¶ 3.01[1][b][VI], at 3–15–3–19 (15 Ed.1986).

from the debtor to Guardian and themselves without adequate consideration and with actual intent to hinder, delay and defraud the debtor's creditors.

Nichols filed a demand for a jury trial with his answer. He also moved to dismiss the adversary proceeding on the ground that the court lacked subject matter jurisdiction since 28 U.S.C. § 1471 had been declared unconstitutional in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), and the Emergency Rule, he claimed, was beyond the power of the district court to issue. In the altnernative, he moved to remove the action to the District Court as a "related proceeding." The term "related proceedings" was used in the Emergency Rule to refer to matters as to which the bankruptcy judge was precluded from entering a final judgment or dispositive order.[2]

Under the Emergency Rule, bankruptcy judges could not conduct jury trials. Section (d)(1)(D) of the Emergency Rule specif-

ically prohibited bankruptcy judges from conducting such trials. They were directed by the Emergency Rule to transfer to a district judge any matters which they were prohibited from performing. In light of the defendant's demand for a jury trial, Bankruptcy Judge Radoyevich, stating that he was acting pursuant to this section, (d)(1)(D), ordered the Clerk of the Bankruptcy Court to transfer this adversary proceeding to the District Court for assignment to a district judge. He did not otherwise rule on Nichols' various motions.

Upon transfer to the District Court, this matter was assigned to then District Judge Altimari, who, after denying the motion to dismiss, referred the case back to Bankruptcy Judge Radoyevich pursuant to (c)(2) of the Emergency Rule. Section (c)(2) of the Emergency Rule authorized the District Court, after withdrawing a reference, to refer all parts of the matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge was to exercise.

---

**2.** Paragraph (d) of the Emergency Rule, which is the paragraph most directly relevant to this proceeding, provided as follows:

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(b) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree or decision of a United States bankruptcy judge; or

(D) jury trials. Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to,

claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

Bankruptcy Judge Radoyevich was instructed to take certain action in accordance with Section (d)(3) of the Emergency Rule. Section (d)(3) of the Emergency Rule covered related proceedings. Bankruptcy Judge Radoyevich was instructed: (1) to schedule the completion of discovery; (2) set dates for the filing of the pre-trial order, pre-trial conference and jury selection and trial, if appropriate; (3) to consider the possibility of settlement and assist therewith; (4) to hold a pre-trial conference, sign the pre-trial order and then "enter an order placing the case on the court's trial calendar and returning the case to the undersigned for trial." Judge Altimari also directed Bankruptcy Judge Radoyevich to hear pre-trial motions and to submit proposed findings of fact and conclusions of law and a proposed judgment or order to the District Court. Judge Altimari's Order concluded with the admonition that the bankruptcy judge "shall enter no final judgments or dispositive orders."

After the proceeding was returned to the Bankruptcy Court, Judge Altimari's instructions were carried out first by Bankruptcy Judge Radoyevich and then by the undersigned. Settlement was reached by the bankruptcy trustee with Guardian and Pinto. With respect to the case against Nichols, discovery was completed and a pre-trial order entered. Both sides are now ready to proceed with the trial against Nichols.

However, the matter has not been returned to the District Court for trial because subsequent to the issue of Judge Altimari's Order of November 28, 1983, Congress enacted The Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353, 98 Stat. 333), which replaced the Emergency Rule as to all pending cases as of July 10, 1984 ("the 1984 Amendments").

These Amendments differ from the Emergency Rule in certain significant respects. One is that they contain no prohibition against jury trials by bankruptcy courts. A second is that the 1984 Amendments divide bankruptcy jurisdiction into "core" and "non-core" proceedings. In a core proceeding, the bankruptcy judge has power to enter a final judgment or order; in non-core proceedings, he has not. 28 U.S.C. § 157(c)(1). Specifically included in core proceedings are "proceedings to determine, avoid or recover preferences," 28 U.S.C. § 157(b)(2)(F), and "proceedings to determine, avoid or recover fraudulent conveyances," 28 U.S.C. § 157(b)(2)(H).

In view of this change in the law, this Court scheduled a status conference to consider, *inter alia,* the application of the jurisdictional provisions of the 1984 Amendments to this proceeding and whether a jury trial is required.

Nichols is now taking the position that the Court is barred from retaining this proceeding in this Court by the prior orders of Judges Altimari and Radoyevich. Judge Radoyevich's Order, Nichols contends, was a decision to abstain pursuant to 28 U.S.C. § 1334(c) and as law of the case, is not reviewable by appeal or otherwise.

Nichols continues to insist on his right to a jury trial under the Seventh Amendment, which he says the bankruptcy court has the power to conduct if it retains the matter.

## DISCUSSION

### I

The contention that this Court will be failing to respect the law of the case if it retains this proceeding need not detain us long.

█ Bankruptcy Judge Radoyevich did not abstain pursuant to 28 U.S.C. § 1334(c), which did not even come into existence until enactment of the 1984 Amendments, almost a full year after he referred the matter back to the District Court. He reacted automatically to the demand for a jury trial which the Emergency Rule made clear he could not conduct. In any event, § 1334, which deals with abstention by the district courts from matters which can be heard in the state courts, is irrelevant.

█ Judge Altimari's Order can no longer be given effect because since it was

issued, the procedural law has been radically changed. The Emergency Rule has come to an end. It has been superseded by the 1984 Amendments. *In re Adams*, 761 F.2d 1422, 1424–25 (9th Cir.1985); *In re Gaildeen*, 59 B.R. 402, 404 n. 4 (N.D.Cal. 1986); *In re Lombard-Wall, Inc.*, 48 B.R. 986, 989–90 (S.D.N.Y.1985) (Goettel, J.); *In re Gibbons Construction Co.*, 46 B.R. 193 (E.D.Ky.1984). Judge Altimari's admonition that the bankruptcy court shall enter no final judgment is in square conflict with 28 U.S.C. § 157(b), which authorizes the bankruptcy judge to whom a preference or fraudulent conveyance action is referred to enter a final judgment.

Whether this matter should be retained in the Bankruptcy Court for disposition or sent back to the District Court must be resolved under the law as it currently exists, not under an Order issued pursuant to an Emergency Rule which has ceased to exist.

II

The causes of action pleaded in the complaint, alleged preferences and fraudulent conveyances, are squarely covered by the definition of "core proceedings," which the bankruptcy courts are authorized by the 1984 Amendments to hear and determine.

█ But since only monetary damages are sought, rather than equitable relief, the causes of action pleaded equally clearly are legal, not equitable causes of action. Under the test laid down in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970),[3] as actions at law, the parties to them are entitled to a trial by jury, a right which the Seventh Amendment[4] protects from abrogation. *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); *In re Graham*, 747 F.2d 1383 (11th Cir.1984); *In re Checkmate Stereo &*

*Electronics, Ltd.*, 21 B.R. 402 (E.D.N.Y. 1982) (Pratt, J.); *In re Lombard-Wall, supra; In re Gaildeen Industries, supra; In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824 (S.D.N.Y.1985) (Keenan, J.); *In re Paula Saker & Co., Inc.*, 37 B.R. 802 (Bankr.S. D.N.Y.1984); *In re Boss-Linco Lines, Inc.*, 55 B.R. 299 (Bankr.W.D.N.Y.1985); *In re McCrary's Farm Supply, Inc.*, 57 B.R. 423 (Bankr.E.D.Ark.1985);

Entrusting to the bankruptcy courts for final determination proceedings which historically have enjoyed Seventh Amendment protection raises constitutional issues which cannot be avoided. Did Congress intend to deny the right to a jury trial with respect to all matters defined as "core" proceedings? And, if so, is such action consistent with the Seventh Amendment? Or, assuming that Congress did not intend any change in the right to a jury trial protected by the Seventh Amendment, may the bankruptcy courts conduct such a trial? Can a non-Article III court conduct a jury trial? Does such a trial by a non-Article III court satisfy the Seventh Amendment?

So far as our research has disclosed, no Court of Appeals has as yet addressed these questions, although they are the subject of several district court opinions and of a score or more of bankruptcy decisions. In the main, two clear lines of authority are emerging.

One line of cases, relying in the main on *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and its predecessor, *Barton v. Barbour*, 104 U.S. (14 Otto) 126, 26 L.Ed. 672 (1881), takes the position that all proceedings in the bankruptcy courts are inherently equitable and, therefore, that there exists no right to a trial by jury in that court, whatever the cause of action pleaded in the complaint. *In re Durbin*, 62 B.R. 139, 145 (S.D.Fla.

---

**3.** 396 U.S. at 538 fn. 10, 90 S.Ct. at 738 fn. 10; "[T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries."

**4.** The Seventh Amendment reads:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

1986) ("[A] core proceeding is a proceeding created by the bankruptcy code and since bankruptcy is equitable in nature, all core proceedings are also equitable. Under the 7th amendment there is no right to a trial by jury in a court of equity, therefore, there is no right to trial by jury in core proceedings."); *In re Major Tire Co.*, 64 B.R. 305, 307 (Bankr.N.D.Ga.1986) ("Clearly the questions before this Court are core proceedings and thus are equitable in nature ... Defendant has no Seventh Amendment right to a jury trial in this proceeding."). *Accord, Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 180–184 (Bankr.E.D.N.Y.1986) (no right to jury trial in core proceedings); *Hauytin v. Grynberg*, 52 B.R. 657, 661 (Bankr.Col.1985). *See also, In re Harbour*, 59 B.R. 319 (W.D. Va.1986); *In re Associated Grocers of Nebraska Cooperative, Inc.*, 62 B.R. 439 (D.Neb.1986).

These cases take the view that when Congress denominated certain actions as core proceedings adjudicable by the bankruptcy court, it converted them all to equitable proceedings not entitled to trial by jury. The often quoted passage from *Barton v. Barbour*, 104 U.S. (14 Otto) 126, 134, 26 L.Ed. 672 (1881) is cited:

> So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.

The right of trial by jury, the Supreme Court said in *Barton v. Barbour*,

> considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity. *Id.* at 133.

In *Katchen v. Landy, supra,* the Supreme Court turned aside a challenge under the Seventh Amendment and held that the bankruptcy court had properly exercised summary jurisdiction over a trustee's counterclaim against a creditor who had filed a claim in the bankruptcy proceeding. The Court there said: "But although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding, and waited a Federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity." 382 U.S. at 336, 86 S.Ct. at 476 (citations omitted). Two earlier decisions protective of the right to a trial by jury were distinguished on the ground that neither involved "a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." 382 U.S. at 339, 86 S.Ct. at 478.

That *Katchen v. Landy* remains good law, despite a footnote questioning its authority in *Marathon*,[5] is shown by its recent invocation as precedent by the Supreme Court in sustaining the jurisdiction of the Commodities Future Trading Commission over state law counterclaims in reparation proceedings. *Commodities Futures Trading Commission v. Schor,* — U.S. —, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986).

The view, resting in the main on *Katchen v. Landy*, that all proceedings in the bankruptcy court are necessarily equitable, has not been universally adopted. Other courts, greater in number, have taken a very different approach resulting in a second and distinct line of authority. Where a jury trial is required, under traditional tests, these courts find the necessary constitutional and statutory authority in the bankruptcy court to conduct a jury trial. *M & E Contractors v. Kugler-Morris Gen-*

---

**5.** 458 U.S. at 79, fn. 31, 102 S.Ct. at 2875, fn. 31 (noting, *inter alia*, absence of discussion of "the Art. III issue" in *Katchen v. Landy* ).

*eral Contractors,* 67 B.R. 260 (N.D.Tex. 1986); *In re Gaildeen Industries, Inc.,* 59 B.R. at 406; *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 730 (M.D.Ga. 1985); *Gibbons Construction, Inc., supra; In re O.P.M. Leasing Services, supra; In re Lombard-Wall, Inc., supra; In re Paula Saker Co., Inc., supra; In re Boss-Linco Lines, Inc., supra; In re Blackman,* 55 B.R. 437, 440-42 (Bankr.D.D.C.1985); *In re Morse Electric Co.,* 47 B.R. 234, 238 (Bankr.N.D.Ind.1985); *In re Baldwin United Corp.,* 48 B.R. 49, 56 (Bankr.S.D. Ohio 1985) (dictum); *Accord, In re George Woloch Co.,* 49 B.R. 68, 69-70 (E.D.Pa. 1985); *Acolyte Electric Corp., supra* (authority to conduct jury trials in non-core proceedings).

But for *Marathon,* there would be no question but that the bankruptcy courts had the necessary statutory authority to conduct jury trials. One of the major reforms which Congress intended to accomplish with the enactment of the Bankruptcy Reform Act of 1978 (Public Law 95–598, Sect. 101 (92 Stat. 2549) (1978)) was to eliminate the "serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction." S.Rep. No. 95–989, 95th Cong., 2nd Sess., 17 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5803. Section 1480 of Title 28, added by § 241(a) of the Bankruptcy Reform Act of 1978, was generally read as authorizing the bankruptcy courts to conduct jury trials whenever a right to such a trial existed on September 30, 1979.[6]

When the Supreme Court in the *Marathon* case held that the authority given the bankruptcy court trespassed on the judicial power confided by the Constitution to Article III courts, it pointed to the power given the bankruptcy courts to conduct jury tri-

als as exemplifying the broad role those courts were given. 458 U.S. at 85, 102 S.Ct. at 2878. The doubt this suggested as to the constitutionality of permitting Article I judges to conduct jury trials was echoed in *Commodities Futures Trading Commission v. Schor, supra,* where in sustaining the jurisdiction of the Commission as not encroaching on Article III judicial power, the Supreme Court noted that, unlike the bankruptcy court, the Commission did not have the power to preside over jury trials. 106 S.Ct. at 3259.

It was no doubt in deference to the intimation in *Marathon,* that jury trials could not be conducted by non-Article III courts, that the drafters of the Emergency Rule specifically prohibited the bankruptcy courts from conducting such trials.

However, subsequent to the adoption of the Emergency Rule, the new Bankruptcy Rules approved by the Supreme Court dealt in detail with the conduct of jury trials by the bankruptcy courts, (Bankruptcy Rules 9015, 9027(i)) suggesting that there was no constitutional impediment to such trials. District Judge Keenan, in *In re O.P.M. Leasing Services, supra,* in overruling Bankruptcy Judge Lifland (who had relied on *Katchen v. Landy* in finding no right to a jury trial), observed: "Indeed, the Supreme Court provided for jury trials under Bankruptcy Rule 9015 in 1983. A broad reading of *Katchen* would render this provision meaningless ... and this Court declines to find that the Supreme Court would promulgate meaningless rules." 48 B.R. at 827, fn. 2. *See also, In re River Transportation Co.,* 35 B.R. 556 (Bankr.M.D.Tenn.1983); *In re Martin Baker Well Drilling, Inc.,* 36 B.R. 154 (Bankr. Me.1984). *Contra, In re Proehl,* 36 B.R. 86 (W.D.Va.1984).

---

**6.** Section 1480(a) provided:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

The House Report which accompanied the bill stated:

Subsection (a) continues any current right of litigants in bankruptcy cases, such as plenary actions, to a jury trial.

H.R.Rep. No. 595, 95th Cong., 1st Sess., 448 (1977), U.S.Code Cong. & Admin.News 1978, p. 6404.

Against this background, Congress enacted the 1984 Amendments, which, it is generally accepted, despite some ambiguity, repealed 28 U.S.C. 1480. Respecting jury trials, all the law now contains is a provision preserving the right to jury trial in personal injury or wrongful death claims. 28 U.S.C. § 1411(a). These actions must be heard in the district court. 28 U.S.C. § 157(b)(5). As already noted, the prohibition on jury trials contained in the Emergency Rule was not copied by Congress.

Reflecting the general uncertainty as to the status of jury trials in the bankruptcy courts, Bankruptcy Rule 9015 is being deleted in the proposed revision of the Bankruptcy Rules with the comment that should such a right be defined by the Courts of Appeal or the Supreme Court, a local rule can fill the gap.[7]

Regrettably, this Court does not have the option of waiting for a higher court to define the right to jury trial in bankruptcy matters, but must act today.

This Court is unable to accept the view that Congress either intended or has the right to strip Seventh Amendment protection from traditional actions-at-law simply by vesting jurisdiction to decide then in the bankruptcy court. While there is broad language in *Katchen v. Landy* that might support such a view, that decision rests on the fact that the defendant there had consented to the jurisdiction of the bankruptcy court by filing a claim. Similarly, in *Schor*, which relies on *Katchen v. Landy*, the Court emphasized the voluntary invocation of the jurisdiction of the tribunal there involved. 106 S.Ct. at 3256–57.

This Court agrees with District Judge Buchmeyer of the Northern District of Texas, who has rejected the view that Seventh Amendment rights are forfeited in core proceedings:

> *Katchen* was decided under the 1898 Act in which bankruptcy courts possessed only summary jurisdiction; it cannot be read for the proposition that all core proceedings are, by definition, equitable. To ascertain whether the Seventh Amendment attaches, reference must be made to the common law at the time of the adoption of the amendment, *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935); "legal claims are not magically converted into equitable issues by their presentation in a court of equity." Congress cannot transform a legal proceeding into an equitable proceeding and thus abrogate the terms of a constitutional provision. [citations omitted]. A litigant does not abandon constitutional protection simply because the proceedings are in a bankruptcy court.

*M & E Contractors v. Kugler-Morris General Contractors*, 67 B.R. at 266–67 (N.D.Tex.1986) (footnotes omitted).

Since Nichols did not lose his constitutional protection under the Seventh Amendment when Congress gave this Court jurisdiction over core proceedings, he is entitled to a jury trial.

No clear answer can yet be given, however, as to whether this Court has the power to conduct such a trial. Bankruptcy judges, understandably anxious to avoid further evisceration of their jurisdiction and the revival of the old summary-plenary disputes, have naturally tended to find such authority. Disinterested commentators, however, have tended to question its existence. Sabino, *Jury Trials in the Bankruptcy Court: A Continuing Controversy*, Commercial Law Journal 342, August/September 1985; King, *The Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984*, 38 Vanderbilt Law Review, 675, 702–708 (1985). The issue, therefore, is clouded in doubt.

Two provisions of the Constitution are pertinent: Article III and the Seventh Amendment.

Despite the suggestion in *Marathon* that the ability to conduct jury trials is one of the indicia of an Article III court, jury

---

**7.** *See* Text of Proposed Bankruptcy Rules as Submitted for Supreme Court Approval, Bankruptcy Service Current Awareness Alert, Part II, 195–198 (December 1986).

trials have not been considered the exclusive province of Article III courts.

Jury trials were available in the bankruptcy courts under Section 19 of the Bankruptcy Act of 1898 (former 11 U.S.C. § 42) on the issue of insolvency. Their authority to conduct such trials was sustained in *In the Matter of Palfy*, 336 F.Supp. 1268, 1269 (N.D.Ohio 1972) and was expressly authorized in the Bankruptcy Rules, which became effective in 1973.

Federal magistrates, which are likewise not Article III judicial officers, have been held to have the right to conduct jury trials with the consent of the parties. While the Supreme Court has not yet ruled, every Court of Appeals that has passed on the issue has sustained such power. In *Fields v. Washington Metro Area Transit Authority*, 743 F.2d 890, 894 (D.C.Cir.1984), the Court of Appeals for the District of Columbia held: "[O]nce the jurisdiction of the district court over the case has been established, the parties may freely consent to trial by an officer within the court who does not enjoy full Article III protections without offending the constitutional provisions."

But while presiding over a jury trial may not encroach on the judicial power reserved to Article III judges, it is less clear that such a trial satisfies the Seventh Amendment. That issue would not need to be reached, however, if the parties would consent to a jury trial in this Court.

As the Supreme Court has recently pointed out "personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried" are subject to waiver. *Schor*, 106 S.Ct. at 3256.

■ Therefore, if Nichols consents to trial by jury in this Court, this Court can proceed to final judgment with some assurance that it is not exceeding its constitutional powers.

■ If, however, the parties are unwilling to give their consent, then in the interests of judicial economy, this Court will take appropriate steps to have the reference withdrawn and the matter returned to the District Court for trial. It would impose an intolerable burden on the plaintiff-trustee and this Court to have this Court conduct a jury trial to verdict and judgment, only to have both upset on constitutional grounds, as appears not unlikely, requiring a full re-trial before a new jury in the district court.

This court recognizes that the District Court, (like Judges Keenan and Goettel in the Southern District), may be of the opinion that this Court should proceed with a jury trial, despite its doubts as to the constitutionality of an Article I judge conducting a jury trial mandated by the Seventh Amendment over the opposition of the parties. Should that be the case, the Court is, of course, ready to do so.

An Order shall be issued coincidentally with this Opinion, directing the parties, within ten days of their receipt thereof, to notify the Court in writing of either their consent or non-consent to the holding of a jury trial before the Court.

So Ordered.