In re DATA COMPASS CORP., Debtor.

DATA COMPASS CORP., Plaintiff

v.

DATAFAST, INC., Defendant.

Bankruptcy No. 885–50428–20.
Adv. No. 886–0262–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 25, 1988.

Kevin O'Toole, Macco & Hackeling, Huntington, N.Y., for Data Compass Corp.

Robert J. Goldstein, Hartsdale, N.Y., for Datafast, Inc.

## MEMORANDUM OPINION AND ORDER

ROBERT J. HALL, Bankruptcy Judge.

We address ourselves to the question of whether this Court has the authority to conduct a jury trial in a core proceeding. The demand for a jury trial made by the defendant Datafast, Inc. ("Datafast") is not opposed. For the reasons discussed below, we find that the defendant is entitled to a jury trial under the facts of this case and we are of the opinion that this Court may have the authority to conduct a jury trial; we nevertheless respectfully submit that pending a more conclusive determination of this issue the interests of judicial economy and the administration of this case would best be served by the transfer of this adversary proceeding to the District Court so as to allow it to proceed to trial in the District Court as a more appropriate forum for a jury trial.

### FACTS

Defendant Datafast was served on November 20, 1986 with the Summons and Complaint in this adversary proceeding, several months after the bar date of June 1, 1986 ordered by this Court with respect to the filing of claims. Datafast was not listed as a creditor in the schedules filed by the Debtor with this Court, nor has Datafast filed a proof of claim. The complaint alleges one fraud and two breach of contract causes of action and seeks, in addition to monetary damages, an accounting of certain revenues by Datafast, Inc. This Court on April 30, 1987 held the Debtor's action to be a "core" proceeding, which holding was affirmed on April 11, 1988 by the District Court, J. Mishler presiding. Datafast made demand for a jury trial on April 28, 1988, simultaneous with the filing of its answer and counterclaims alleging seven fraud causes of action and one breach of contract cause of action.

1. The Seventh Amendment reads:
    In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury shall be otherwise re-examined in any Court of the United States,

By means of correspondence dated May 31, 1988 this court is advised that the parties have determined there will be a need for extensive discovery in this matter and a pre-trial conference is requested.

### I

The threshold question presented by the facts at hand is whether Datafast has a right to a jury trial not otherwise waived. The right of a party to a jury trial as preserved by the Seventh Amendment to the Constitution [1] is a beacon which refuses to be obscured by the controversy surrounding the authority of bankruptcy court to conduct a jury trial. In interpreting a provision of the judicial code which served "to guard the right of trial by jury preserved by the Seventh Amendment" the Supreme Court stated that, as such, it should be "liberally construed".[2] The pleadings in this case, containing causes of action for breach of contract and fraud, fall well within the guidelines set forth by the Supreme Court for the determination of the protective scope of the Seventh Amendment:

"... The Court has construed this [Seventh Amendment] language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law.' Prior to the Amendment's adoption, a jury trial was customary in suits brought in the English *law* courts. In contrast, those actions that are analogous to 18th–century cases tried in courts of equity or admiralty to not require a jury trial. This analysis applies not only to common law forms of action, but also to causes of action created by congressional enactment.

To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of

than according to the rules of the common law.

2. *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932).

the action and of the remedy sought. First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature."

*Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987).

The Debtor's request for an accounting does not change our conclusion that this proceeding is fundamentally an action at law, for " 'only under the most imperative circumstances ... can the right to jury trial of legal issues be lost through prior determination of equitable claims' ".[3] In order to determine whether the proceeding is brought at law or lies in equity, the court must examine both the historical treatment of the issue and the nature of the remedies sought, resolving all ambiguities in favor of providing a jury trial. *Ross v. Bernhard,* 396 U.S. 531, 542–43, 90 S.Ct. 733, 740–441, 24 L.Ed.2d 729 (1970) ("Ross").[4] In any event, it is the defendant who has made demand for a jury trial in this case, and the counterclaims make no request for equitable relief, only monetary damages. Thus, severance of the trial of the complaint from consideration of trial of the counterclaims would serve only to reinforce our conclusion that the defendant's right to a jury trial is not compromised by the pleadings.

Having concluded that the defendant's right falls squarely within the parameters set forth by the Supreme Court in construing the Seventh Amendment, we turn to whether the defendant has in any way waived its right to a jury trial.

We find that the defendant's demand is timely, having been filed promptly after the adjudication by the District Court that this proceeding is a core proceeding. It is not necessary that such a demand be made prior to the filing of the answer to a complaint, and the time for filing of the answer was tolled pending adjudication of whether this Court had jurisdiction of the matter. Our determination on this issue, as a practical matter, renders moot the reserve decision taken by this Court on the Order to Show Cause petitioned by the defendant seeking a stay of this adversary proceeding pending the District Court's review of the appeal taken by Datafast of this Court's April 30, 1987 decision.

We also note that the defendant did not originally consent to the jurisdiction of this Court. The Supreme Court has held that the voluntary submission to the jurisdiction of the bankruptcy court, traditionally a court of equity, operates as a waiver of that party's seventh amendment right to a jury trial.[5] Defendant did not seek to file a proof of claim after the commencement of this adversary proceeding and, moreover, maintained from the outset that this dispute was a non-core proceeding. Nor did Datafast file an answer and counterclaim prior to the determination of its appeal of this Court's holding that the dispute is a core proceeding. The only basis for finding implied consent that we can determine is that the defendant's counterclaims, which are on the order of compulsory counterclaims as set forth in Federal Rule of Civil Procedure 13, are to be treated as permissive counterclaims by virtue of Bankruptcy Rule 7013,[6] with all of the at-

---

3. *Katchen v. Landy,* 382 U.S. 323, 338, 86 S.Ct. 467, 477, 15 L.Ed.2d 391 (1966) ("Katchen") (quoting *Dairy Queen, Inc., v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962) and citing the doctrine of *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).)

4. The test as set forth in *Ross* is found at 396 U.S. 538 fn. 10, 90 S.Ct. 738 fn. 10: "[T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and

third, the practical abilities and limitations of juries."

5. *Id., Katchen.*

6. Bankruptcy Rule 7013 reads:
   Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief. A trustee or debtor in possession who fails to plead a

tendant consequences. If the counterclaims are permissive, then it follows that Datafast has consented to the jurisdiction of this Court by filing its counterclaims with this Court, thereby [following the reasoning in *Katchen* ] effectively waiving any previous right to a jury trial. Before reaching such a finding, this Court must also consider the clear mandate of 28 U.S.C. § 2075 that the "rules shall not abridge, enlarge, or modify any substantive right." Clearly, a consequence of applying Bankruptcy Rule 7013 in such a manner would operate to divest the defendant of its right to a jury trial as to the core action. A similarly situated defendant would be compelled to choose not to file its counterclaims in order to preserve its seventh amendment right with respect to the original action only to risk being collaterally estopped from pursuing those counterclaims in another forum. Numerous courts have held that a claim and a counterclaim arising out of the same transaction comprise a single legal controversy that should not be divided.[7] We believe it would constitute a violation of due process, in the absence of any other evidence that the defendant has consented to the jurisdiction of this Court, to apply Bankruptcy Rule 7013 in such a way as to find that defendant has waived its right to a jury trial as to the core action. A waiver of any constitutional right must be knowing, voluntary, and intelligent.[8] Finally, the Supreme Court has consistently held that courts must indulge in every reasonable presumption against

waiver of the seventh amendment right to a jury trial.[9]

Having determined that the defendant has neither affirmatively waived its seventh amendment right nor consented to the jurisdiction of this Court in such a way as to have lost its right to a jury trial on the Debtor's complaint, we must evaluate whether the adjudication of this action at law as a core proceeding can operate to deprive Datafast of its right to a jury trial.

## II

This Court observed in *In re Adams, Browning & Bates, Ltd.,* 70 B.R. 490 (Bkrtcy.E.D.N.Y.1987) (Goetz, J.), that the law is unsettled as to whether the right to a jury trial is preserved for a core proceeding. The Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. 98–353, 98 Stat. 333) ("the 1984 Amendments") divide bankruptcy jurisdiction into "core" and "non-core" proceedings. In a core proceeding, the bankruptcy judge has power to enter a final judgment or order; in non-core proceedings, he has not. 28 U.S.C. § 157(c)(1). Most core proceedings are inherently equitable and flow from the traditional summary jurisdiction of the bankruptcy court. Causes of action which clearly meet the test set forth in *Ross, supra,* n. 4, as actions of law, have also been held to be "core" when their resolution is intrinsic to the administration of the estate as in the instant case and the determination of a proceeding as core does not render the *Ross* test inapplicable for seventh amend-

---

counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action.
Bankr.Rule 7013, 11 U.S.C.A.

7. See *Peters v. Lines,* 275 F.2d 919, 925 (9th Cir.1960), *In re Majestic Radio & Television Corp.,* 227 F.2d 152, 156 (7th Cir.1955), *cert. denied,* 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860 (1956), *In re Solar Mfg. Corp.,* 200 F.2d 327, 330–331 (3rd Cir.1952), *cert. denied,* 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953), *In re Lombard–Wall, Inc.,* 48 B.R. 986, 990–91 (S.D.N.Y.1985).

8. See, e.g., *Fuentes v. Shevin,* 407 U.S. 67, 94–95, 92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556 (1972), *Brady v. United States,* 397 U.S. 742, 748, 90

S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970), *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Erie Communications, Inc., v. City of Erie,* 853 F.2d 1084, 1094–97 (3rd Cir.1988).

9. See *Beacon Theaters, Inc. v. Westover, supra,* n. 3, 359 U.S. at 510, 79 S.Ct. at 956–57, *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937), *Hodges v. Easton,* 106 U.S. 408, 412, 1 S.Ct. 307, 311, 27 L.Ed. 169 (1882). *See also, e.g., Pernell v. Southall Realty,* 416 U.S. 363, 383–84, 94 S.Ct. 1723, 1733–34, 40 L.Ed.2d 198 (1974), and *National Acceptance Co. v. Myca Products, Inc.,* 381 F.Supp. 269, 270 (E.D.Pa.1974).

ment purposes. The decisions which hold that core proceedings are not restricted to solely traditionally equitable actions are consistent with the objective of Congress in expanding the jurisdiction of the bankruptcy court to include appropriate plenary issues with the enactment of the Bankruptcy Reform Act of 1978 (Public Law 95–598, Sect. 101 (92 Stat. 2549) (1978) ("1978 Bankruptcy Reform Act").[10]

This Court in *Adams, Browning, supra,* was presented with an action brought by the trustee to recover monetary damages for defendants' alleged violations of fraudulent conveyance and preference provisions of the Bankruptcy Code.[11] In holding that the individual defendant was entitled to a trial by jury where monetary damages were the only damages sought we stated:

> "This Court is unable to accept the view that Congress either intended or has the right to strip Seventh Amendment protection from traditional actions-at-law simply by vesting jurisdiction to decide them in the bankruptcy court."

*Adams, Browning, supra,* at 497.

■ In so holding, this Court is in agreement with those who are persuaded that the classification of a matter as a core proceeding does not eliminate a litigant's constitutional right to a jury trial.[12] Another line of cases has relied on *Katchen, supra,* for the proposition that all core proceedings are analogous to the summary jurisdiction of the bankruptcy court under the Bankruptcy Act of 1898 (the "1898 Act") and hence, no right to a jury trial attaches to a core proceeding.[13] We belong to the ranks of those who have observed that the linchpin of the Supreme Court's decision in *Katchen v. Landy*[14] was that the defendant there had consented to the jurisdiction of the bankruptcy court by filing a claim. As discussed above, the defendant in the case before us has not so consented. Moreover, *Katchen* was decided under the 1898 Act when the bankruptcy court possessed *only* summary jurisdiction. The present day Bankruptcy Code was intended to abolish the summary/plenary distinction with respect to the jurisdiction of this Court. The Supreme Court stated in *Katchen* "the Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, Sec. 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts a creditor's legal claims into an equitable claim."[15] The instant case presents a core adversary pro-

---

**10.** "A major impetus underlying this reform legislation has been the need to enlarge the jurisdiction of the bankruptcy court in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction … the jurisdictional limitations presently imposed on the bankruptcy courts have embroiled the court and the parties in voluminous litigation whose sole function is to determine whether the court possesses the requisite summary jurisdiction to determine the merits of issues often necessarily heard by the court in determining its jurisdictional question." S.Rep. No. 95–989, 95th Cong., 2nd Sess., 17 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5803.

**11.** 11 U.S.C. § 101 *et seq.*

**12.** *In re Adams, Browning & Bates, Ltd.,* 70 B.R. 490 (Bkrtcy.E.D.N.Y.1987), *Matter of Kenval Marketing Corp.,* 65 B.R. 548 (E.D.Pa.1986) (*followed by In re Jackson,* 90 B.R. 126 (Bkrtcy.E.D.Pa.1988)), *M & E Contractors v. Kugler–Morris General Contractors, Inc.,* 67 B.R. 260 (N.D.Tex.1986), *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (M.D.Ga.1985), *Matter of Silver Mill Frozen Foods, Inc.,* 80 B.R. 848, (Bkrtcy.W.D.

Mich.1987), *In re Wencl,* 71 B.R. 879 (Bkrtcy.D.Minn.1987), at 883, n. 3, *In re Rodgers & Sons, Inc.,* 48 B.R. 683 (Bkrtcy.E.D.Okla.1985), *In re Atlantic Energy, Inc.,* 52 B.R. 17 (Bkrtcy.S.D.Fla.1985), *In re Mauldin,* 52 B.R. 838 (Bkrtcy.N.D.Miss.1985).

**13.** The progeny of *Katchen* which fall in this category include *In re Chase & Sanborn Corp.,* 835 F.2d 1341 (11th Cir.1988), *cert. granted sub. nom. Granfinanciera S.A. v. Nordberg,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988) ("Granfinanciera"), *In re Harbour,* 840 F.2d 1165 (4th Cir.1988), *cert. filed sub. nom. Perkinson v. Hoffman,* 56 U.S.L.W. 3807 (U.S. April 25, 1988), *Matter of McLouth Steel Corp.,* 55 B.R. 357 (E.D.Mich.1985), *In re Visidata Corp.,* 84 B.R. 673 (Bkrtcy.N.D.Cal.1988), *In re Smith,* 84 B.R. 175 (Bkrtcy.D.Ariz.1988), *In re G. Weeks Securities, Inc.,* 89 B.R. 697 (Bkrtcy.W.D.Tenn.1988), *Matter of Baldwin–United Corp.,* 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985), *In re Lee,* 50 B.R. 683 (Bkrtcy.D.Md.1985), *In re Schmid,* 54 B.R. 520 (Bkrtcy.E.D.Pa 1986).

**14.** *Supra,* n. 3.

**15.** *Id.,* 382 U.S. at 336–37, 86 S.Ct. at 476.

ceeding, fundamentally an action at law, brought by the Debtor against a defendant which is not otherwise subject to the jurisdiction of this Court. We do not find the holding in *Katchen* to be determinative of the issue before us, but rather that this case belongs to at "at least a narrow class of proceedings that are core, but legal in nature." [16] We have difficulty accepting the proposition that the Bankruptcy Code operates to convert this action into an equitable one for the purpose of determining whether the defendant has been divested of its seventh amendment right to a trial by jury.

We note that the 1987 Advisory Committee Note to the current national Bankruptcy Rules, states that Bankruptcy Rule 9015 was deleted because it "has been cited as conferring a right to jury trial in other matters (other than personal injury or wrongful death actions, addressed in 28

U.S.C. § 1411, trial of which is specifically confined to the district court pursuant to 28 U.S.C. § 157(b)(5)) before bankruptcy judges." [17] Since a procedural rule may not enlarge any substantive right, the rule was abrogated unless and until "the courts of appeals or the Supreme Court define a right to a jury trial in any bankruptcy matters, ..." [18] At the time *Adams, Browning* was decided (February 25, 1987), Bankruptcy Rule 9015 had been deleted in the proposed revision of the Bankruptcy Rules, which deletion was effective as of August 1, 1987.[19]

Neither the Eastern District of New York nor the Southern District of New York have ever relied on Bankruptcy Rule 9015 in finding that a right to a jury trial may exist for some bankruptcy matters,[20] and case law on this issue subsequent to August 1, 1987 continues to respect the

**16.** *In re Direct Satellite Communications, Inc.*, 91 B.R. 7 (Bkrtcy.E.D.Pa.1988) citing *In re Jackson*, 90 B.R. 126 (Bkrtcy.E.D.Pa.1988).

**17.** Advisory Committee Note, 114 F.R.D. at 392 (1987).

**18.** *Id.*

**19.** Proposed Bankruptcy Rules of Procedure were transmitted by the Judicial Conference to the Supreme Court in late 1986, and the high Court transmitted the Proposed Bankruptcy Rules to the Congress on March 30, 1987. Absent action by Congress, the Proposed Bankruptcy Rules automatically became effective on August 1, 1987. 28 U.S.C. § 2075, Order of the Chief Justice (March 30, 1987), 114 F.R.D. 193 (1987).

**20.** It is appropriate to differentiate between case authority for the proposition that the right to a jury trial survives in certain bankruptcy matters from cases which address the authority of the bankruptcy court to conduct a jury trial. Case law for the Southern and Eastern Districts of New York decided prior to the repeal of Bankruptcy Rule 9015 includes the following decisions:

*In re Lafayette Radio Electronics Corp.*, 761 F.2d 84 (2d Cir.1985) [fn. 2 at p. 89: "If Jonnet had had a statutory or constitutional right to a trial by jury, then it would have had a right to such a trial by a court having authority to conduct it; and, rather than have its case tried in the bankruptcy court without a jury, it would have had the right to have the reference to the bankruptcy court withdrawn and the case tried before a jury in the district court."] [Note: the

Jonnet proceeding referred to was considered a "related", not a "core" proceeding by the Second Circuit], *Pied Piper Casuals v. Insurance Co. of State of Pa.*, 72 B.R. 156 (S.D.N.Y.1987) [bankruptcy court not authorized to conduct a jury trial in non-core proceeding; the necessity of preserving defendant's right to a jury trial constitutes "good cause" for withdrawal pursuant to 28 U.S.C. § 157(d) ], *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824 (S.D.N.Y.1985) [right to a jury trial a function of the three factor test set forth in *Ross v. Bernhard;* Bankruptcy Rule 9015 cited as authority for bankruptcy court to conduct jury trials], *In re Lombard–Wall Inc.*, 48 B.R. 986 (S.D.N.Y.1985) [right to a jury trial is a function of the *Ross* test, *supra;* Bankruptcy Rule 9015 cited as authority for bankruptcy court to conduct jury trials], *Matter of Honeycomb, Inc.*, 72 B.R. 371 (Bkrtcy.S.D.N.Y.1987) [defendant's position found to parallel that of defendant in *Katchen* and defendant thereby waived right to trial by jury; authority of bankruptcy court to conduct jury trials follows from the power to issue final judgment in a case], *In re Adams, Browning & Bates*, 70 B.R. 490, (Bkrtcy.E.D.N.Y.1987) [right to a jury trial is a function of the *Ross* test, *supra;* bankruptcy court has authority to conduct jury trials in core matters upon consent of the parties], *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155 (Bkrtcy.E.D.N.Y.1986) [issue of authority of bankruptcy court to conduct a jury trial found moot in this non-core proceeding where abstention also appeared to be mandated; *obiter dictum* conclusion as to authority of bankruptcy court to conduct jury trials only upon consent of the parties].

applicability of the *Ross* test in making this determination.[21]

Having concluded that Datafast has a right to a jury trial and has not been divested of this right by virtue of affirmative waiver nor operation of law, we must now address the issue of whether this Court has the authority to conduct a jury trial.

### III

Case law in the Southern and Eastern Districts of New York which address the authority of this Court to conduct a jury trial was largely decided prior to August 1, 1987 and these holdings reflect reliance on the existence of Bankruptcy Rule 9015 to a certain extent. The two exceptions to this observation are this Court's decision in *Adams, Browning*, and *Matter of Honeycomb, Inc.* (Bkrtcy.S.D.N.Y.), *supra*, n. 20. Case law for these districts since August 1, 1987 has not reached this issue because generally no right to a jury trial has been found or withdrawal of reference was granted for a different reason.[22]

In *Adams, Browning* this Court stated "No clear answer can yet be given, however, as to whether this Court has the power to conduct such a trial." [23] We further observed:

"Despite the suggestion in *Marathon* [24] that the ability to conduct jury trials is one of the indicia of an Article III court, jury trials have not been considered the exclusive province of Article III courts.

"Jury trials were available in the bankruptcy courts under Section 19 of the Bankruptcy Act of 1898 (former 11 U.S. C. § 42) on the issue of insolvency. Their authority to conduct such trials was sustained in *In the Matter of Palfy*, 336 F.Supp. 1268, 1269 (N.D.Ohio 1972) and was expressly authorized in the Bankruptcy Rules, which became effective in 1973.

"Federal magistrates, which are likewise not Article III judicial officers, have been held to have the right to conduct jury trials with the consent of the parties."

*Adams, Browning, supra,* at 498.

Since *Adams, Browning* was decided, two Courts of Appeals have addressed the issue of the authority of a bankruptcy court to conduct a jury trial, a writ of certiorari has been filed in each case, and to date the Supreme Court has granted the writ of certiorari filed by the 11th Circuit.[25]

The Eleventh Circuit held in *Granfinanciera* that the defendant in a constructive fraud proceeding brought by a Chapter 11 trustee pursuant to 11 U.S.C. § 548(a)(2), wherein the trustee sought only monetary relief, was not entitled to a jury trial. The Fourth Circuit held in *In re Harbour* that the defendants in fraudulent and preferential transfer proceedings brought by a Chapter 7 trustee pursuant to 11 U.S.C. § 547(b), 548(a), where the trustee sought to recover funds, were not entitled to a jury trial. Both circuit courts implicitly assumed that the intent of Congress in passing the Bankruptcy Code paralleled the legislative intent underlying the passage of

---

**21.** *In re McCorhill Publishing, Inc.,* 90 B.R. 633 (Bkrtcy.S.D.N.Y.1988) [each party was found to have consented to the bankruptcy court's equitable jurisdiction and thereby waived right to a jury trial for core proceedings], *In re Wm. S. Newman Brewing Co., Inc.,* 87 B.R. 236 (Bkrtcy. N.D.N.Y.1988) [parties assumed to be entitled to a jury trial for purposes of certification to the District Court; bankruptcy court stated to be without authority to hear a non-core proceeding in light of jury demand made at the time complaint was filed], *In re Blue Point Carpet, Inc.,* 86 B.R. 329 (Bkrtcy.E.D.N.Y.1988) [defendant's request for jury trial in non-core proceeding likely to result in withdrawal of reference], *In re Friedberg,* 87 B.R. 3 (S.D.N.Y.1988) [motion for withdrawal of reference remanded for determination as to whether or not proceeding was core, *obiter dictum* stating "a jury trial can be held in the bankruptcy court." at 6], *In re Wedtech Corp.,* 81 B.R. 237 (S.D.N.Y.1987) [motion for withdrawal of reference granted in deference to judicial economy].

**22.** *Id.*

**23.** *Adams, Browning, supra,* at 497.

**24.** *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon").

**25.** *Granfinanciera,* (11th Cir.1988) and *In re Harbour,* (4th Cir.1988), *supra,* n. 13.

the 1898 Act in applying *Katchen* to find no right to a jury trial:

"This is in accord with *Katchen v. Landy*, [citation] where the Supreme Court stated '[t]he Bankruptcy Act, passed pursuant to the power given to Congress by Art. I, Sec. 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts a creditor's legal claims into an equitable claim.' [citation] If pursuant to this constitutional power, Congress may convert a creditor's legal right into an equitable claim and displace any seventh amendment right to trial by jury, Congress may likewise treat other core proceedings in bankruptcy such as actions to avoid fraudulent transfers or preferences."

*Granfinanciera, supra,* at 1349.

"American courts have held core bankruptcy proceedings to be equitable from the beginning of our system of bankruptcy. [citations omitted] Now, Congress has also determined that actions such as the trustee's in this case are core bankruptcy proceedings requiring summary disposition by a bankruptcy judge. As such, they assume the historical equitable posture of all such bankruptcy proceedings, and the litigants involved in these actions have no seventh amendment right to a trial by jury."

*In re Harbour, supra,* at 1178.

We question the above assumption as to the legislative intent underlying the enactment of the Bankruptcy Code as well as any presumption that "core" is synonymous with "historically equitable" and submit that the questions posed by this Court in *Adams, Browning* have yet to be definitively addressed:

"Entrusting to the bankruptcy courts for final determination proceedings which historically have enjoyed Seventh Amendment protection raises constitutional issues which cannot be avoided. Did Congress intend to deny the right to a jury trial with respect to all matters defined as 'core' proceedings? And, if so, is such action consistent with the Seventh Amendment? Or, assuming that Congress did not intend any change

in the right to a jury trial protected by the Seventh Amendment, may the bankruptcy courts conduct such a trial? Can a non-Article III court conduct a jury trial: Does such a trial by a non-Article III court satisfy the Seventh Amendment?"

*Adams, Browning, supra,* at 494.

■ This court is of the view that the seventh amendment right to a jury trial is preserved in a limited class of core proceedings which are inherently actions at law. We further believe that the authority to conduct a jury trial is implicit in 28 U.S.C. § 157(b) with respect to core proceedings. The intent of Congress in abolishing the summary/plenary distinction with the enactment of the Bankruptcy Code, as discussed above (*supra,* n. 10), was in response to the inefficiencies associated with severing plenary actions from the administration of a bankruptcy case.

To hold that a right to a jury trial shall in effect trigger a mandatory withdrawal of reference by the District Court is to once again bifurcate core bankruptcy proceedings when just the opposite was the objective of Congress in enacting the Bankruptcy Code. Cases which rely on *Katchen* for the proposition that this Court lacks the authority to conduct a jury trial do not take satisfactory account of the fact that *Katchen* was decided in the context of the 1898 Act when bankruptcy courts did not enjoy plenary jurisdiction. The summary/plenary distinction was eliminated with the passage of the 1978 Bankruptcy Reform Act. *Marathon* did not hold this elimination to be unconstitutional *per se,* and the 1984 Amendments did not reinstate the distinction in setting forth this Court's jurisdiction. It follows that jury trials would not necessarily "dismember" our present day statutory scheme. On the contrary, to hold that jury trials must be held in a forum other than the Bankruptcy Court is counter to the intent of Congress in establishing a centralized forum for the speedy and efficient resolution of cases essential to the administration of a case under the Bankruptcy Code. We are accordingly reluctant

to accept *Katchen* as a foundation for the proposition that this Court lacks the authority to conduct a jury trial.

In any event, it is well established that a party can consent to an Article I judge conducting a jury trial. The Supreme Court has stated that "personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried" are subject to waiver.[26] The defendant has not in its demand challenged the authority of this Court to conduct a jury trial, nor has it differentiated in its demand as between the core action and the trial of its counterclaims. As noted above, the Debtor did not oppose the demand for a jury trial. We therefore assume for the purpose of this Memorandum Opinion, that we have the mutual consent of the parties at least for a jury trial of the core proceeding.

Notwithstanding the foregoing, we believe that the interest of judicial economy and the administration of this case mandate that the trial of the core proceeding and of the counterclaims not be severed. And we are reluctant further to place upon the parties the burden of a jury trial in this Court only to have the verdict and judgment subject to constitutional challenge and upset in the current environment of judicial review.

We are also concerned with the practical implications of our conclusion on this issue. This Court finds itself in sympathy with the recent observation of J. Brown of the Western District of Tennessee:

> "There are practical reasons why jury trials are not compatible with this Court's normal judicial activity. The Court does not suggest that it is too busy to conduct jury trials, but jury trials are, by nature, more time consuming than bench trials, and one could conclude that the Court's docket and case pace demands do not accommodate jury trials. [citations omitted] This court is not 'physically equipped nor staffed to' prop-

erly and efficiently handle jury panels and trials. *In re Astrocade*, 79 B.R. 983, 991, 16 B.C.D. 1306, 1312 (Bkrtcy.S. D.Ohio 1987). The rapid pace of bankruptcy cases and proceedings do not mesh with jury procedures ... Taken in isolation, this adversary proceeding would not destroy this Court's functions. To permit jury trials as a general concept is another issue.

> "... To permit the conducting of jury trials in the bankruptcy court on an occasional basis may breed trial error through judicial inexperience. It would seem that the bankruptcy court either needs to regularly conduct jury trials or to never conduct them."

*In re G. Weeks Securities, Inc.*, 89 B.R. 697, 710 (W.D.Tenn.1988).

The Court in *Weeks* concluded that there is no statutory or procedural authority for the bankruptcy court to conduct jury trials even if there is consent of the parties. But the concern of J. Brown for the practical impact of jury trials on this Court is echoed by those who *have* held that bankruptcy courts may conduct jury trials in core proceedings:

> "As a practical matter, however, the bankruptcy court in the Eastern District of Pennsylvania, at the present time, is somewhat limited in terms of space, staff and judicial personnel." (whereupon it was decided to remove the adversary proceeding in question to the District Court.)

*Matter of Kenval Marketing Corp., supra,* at 555.

We too are concerned about the inadequate ability of this Court to efficiently administer a jury trial when such trials are conducted on a sporadic basis, due to a lack of appropriate accommodations, staffing and procedures to address the requirements of conducting a jury trial here.

At least one court has expressed concern lest a request for a jury trial be thought an "automatic ticket" to a successful with-

---

**26.** *Commodity Futures Trading Commission v.*     *Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d

drawal of reference to the district court.[27] We do not share that concern if only because of the predominance of "historically equitable" actions within the category of core proceedings. Nor do we wish that our conclusion in the instant case operate to inhibit the ability of our fellow judicial brethren in this Court to undertake conduct of jury trials should they find it possible to surmount the practical obstacles.

The Court in *In re Jackson* stated that they could not find any statute or rule which permitted them to *"sua sponte* suggest that the district court withdraw its reference of the [core] proceeding."[28] In the instant case we believe that 11 U.S.C. § 105 affords sufficient authority for *sua sponte* transfer of appropriate matters to the District Court. As was the difficulty in *Kenval,* this Court is not equipped or adequately staffed to conduct a jury trial. We further note for the District Court's consideration that their abstention from hearing this adversary proceeding is discretionary pursuant to 28 U.S.C. § 1334(c)(1).

In accordance with the foregoing Memorandum Opinion it is hereby

ORDERED, that the Clerk of the Court shall take appropriate steps to have this matter conveyed to the District Court for their trial of this adversary proceeding or such other action and further direction to this Court as they deem appropriate unless within 20 days of this Memorandum Opinion,

(1) said demand for a jury trial is withdrawn; or

(2) this Court is advised in writing that a petition has been filed with the District Court seeking their withdrawal of reference pursuant to 28 U.S.C. § 157 in accordance with this Memorandum Opinion.

675 (1986), at 106 S.Ct. 3256.

**27.** *In re Jackson,* 90 B.R. 126 (Bkrtcy.E.D.Pa. 1988).

