### In re LLOYD SECURITIES, INC., Debtor.

### Robert E. SHIELDS, Trustee, Plaintiff,

### v.

### F. Emmet CICCONE, Irvin Goldstein, Ira Spitzer, Ada Richter and Reinforced Iron Workers Local Union 405 Annuity and Severance Fund, Defendants.

### Adv. Nos. 90–0985S, 93–0252S.

United States Bankruptcy Court, E.D. Pennsylvania.

July 27, 1993.

David A. Searles, Drinker, Biddle & Reath, Philadelphia, PA, for plaintiff-trustee.

Edward Sullivan, Toll, Sullivan & Luthman, Cherry Hill, NJ, for defendant Irvin Goldstein.

---

Mark L. Glosser, Pittsburgh, PA, for defendant F. Emmet Ciccone.

Kent Cprek, Sagot, Jennings & Sigmond, Philadelphia, PA, for defendant Reinforced Iron Workers Local Union 405 Annuity and Severance Fund.

Ira Spitzer, Hulmeville, PA, pro se.

Ada Richter, Merchantville, NJ, Defendant-decedent pro se.

Richard L. Bazelon, Bazelon & Less, Philadelphia, PA, for certain claimants.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## *OPINION*

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION

The issue instantly presented to this court for resolution in the above-captioned adversary proceeding is whether Defendant F. EMMET CICCONE ("Ciccone") has preserved his right to a jury trial in light of his filing, *inter alia,* a Counterclaim in response to the Counts in the Complaint of ROBERT E. SHIELDS, TRUSTEE ("the Trustee"), seeking relief from him. We conclude that, since the Counterclaim filed was not a "compulsory counterclaim," this filing is the equivalent of his filing a proof of claim against the estate of LLOYD'S SECURITIES, INC. ("the Debtor"). Consequently, Ciccone has no right to a jury trial in this matter.

## B. PERTINENT FACTS

This proceeding arises in connection with the Securities and Exchange Act ("SIPA") proceeding of the Debtor, commenced on December 31, 1990, and in connection with the related Chapter 7 bankruptcy cases of MICHAEL W. LLOYD, one of the Debtor's principals, and of two entities owned by the Debtors' principals, APPLIED MORTGAGE, INC. ("Applied") and IBEX PARTNERS I ("IBEX"). The Trustee is trustee in the Chapter 7 cases as well. The Complaint seeks the recovery, from Ciccone, of monies allegedly owed to Applied and IBEX under two Notes and Mortgages executed by Ciccone in connection with his

purchase, from Lloyd, of a property in Sea Isle City, New Jersey ("the Property") in September, 1989, or, in the alternative, payment from him for his use and occupancy of the Property and rescission of the sales contract. The Complaint also sought a determination that Defendants IRA SPITZER and IRVIN GOLDSTEIN had no cognizable legal interest in the Property and that mortgages held by Defendants ADA RICHTER and REINFORCED IRON WORKERS LOCAL UNION 405 ANNUITY AND SEVERANCE FUND ("the Union Fund") be marked satisfied.

To date, a default judgment has been obtained against Spitzer with his consent, and resolutions have been achieved with the estate of the late Richter and with the Union Fund, resulting in the removal of any claim or interest of those three Defendants against the Property. Goldstein has filed an Answer to the Complaint claiming that his participation in the transaction should be preserved, but has otherwise taken no active role in this proceeding. *See In re Lloyd's Securities, Inc.,* 1992 WL 165962 (Bankr.E.D.Pa. July 10, 1992) (mortgage obtained by Goldstein from Lloyd in a transaction involving another Lloyd-related corporate entity is stricken).

Ciccone's initial pleading in this proceeding was a Motion to Determine If [this proceeding were a] Core Proceeding and/or to Abstain and/or to Dismiss ("the Motion") filed on May 3, 1993. On May 17, 1993, this court issued an Order/Memorandum denying the Motion insofar as it sought dismissal and abstention, and determining that Counts I and II of the Complaint, asserting claims against Ciccone, were non-core, but that the remaining Counts III, IV, and V, asserted against Goldstein and the other Defendants, were core. After a status conference of May 18, 1993, we entered an Order of May 19, 1993, directing Ciccone to answer the Complaint by June 18, 1993; directing the Trustee to file any Motions for default or stipulations with the other Defendants forthwith; and scheduling a status hearing on July 6, 1993, to determine "if, when and how" this pro-

ceeding would be tried in light of Ciccone's indications that he would seek a jury trial.

On June 15, 1995, Ciccone filed an Answer and Counterclaim to the Trustee's Complaint. The Counterclaims contained three Counts seeking damages and equitable relief against the Trustee in light of alleged breaches of warranties and fraud by Lloyd in the sale transaction. As he had previously indicated he would do, Ciccone also demanded a jury trial.

On June 29, 1993, the Trustee filed a Reply to the Counterclaim of Ciccone. Thereafter, on July 6, 1993, this court held the scheduled status hearing on this matter. As a result of that status hearing, we issued an Order on July 7, 1993, allowing interested parties until July 20, 1993, to file briefs addressing the issues of Ciccone's entitlement to a jury trial and, if he were so entitled, whether the Trustee's remaining claim against Goldstein should be then severed from his claims against Ciccone. Trial of this proceeding, or any portion thereof which this court could try, was scheduled on September 9, 1993.

The Trustee and Ciccone filed briefs in support of their respective positions on July 20, 1993. Ciccone also filed a motion to withdraw the reference of this matter to the District Court on July 23, 1993.[1]

## C. DISCUSSION

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Court addressed the issue of when a party has a right to a jury trial in litigation arising out of a bankruptcy case. The Court, recognizing that the right to a jury trial continues to exist even in a bankruptcy setting, applied a three-part test for assessing whether a party has a right to a jury trial in bankruptcy-related litigation. The test requires that the court first determine the traditional Seventh Amendment issues of (1) whether the party seeking same would be entitled to a jury trial at common law; and (2) whether the remedies sought were legal or equitable in nature.

*Id.* at 42, 109 S.Ct. at 2790. If the court determines that the first two elements of the test are met, then (3) it must determine whether the particular claim constitutes litigation of a matter involving a public right or a private right. *Id.* at 57–59, 109 S.Ct. at 2798–99. *See In re Light Foundry Associates*, 112 B.R. 134, 136–37 (Bankr. E.D.Pa.1990).

In the instant matter, an action for breach of contract, none of the parties dispute that Ciccone would, but for the context of this proceeding as bankruptcy-related litigation, have a right to a jury trial at common law. Furthermore, the relief sought against Ciccone by the Trustee is, at least partially, the recovery of money, which is a legal remedy. Therefore, a jury trial of all issues is required under the first two tests. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959); and *In re 222 Liberty Associates*, 99 B.R. 639, 645–46 (Bankr.E.D.Pa.1989).

Remaining is the issue of whether public rights are implicated by this proceeding. As set forth in *Granfinanciera, supra*, 492 U.S. at 58–59, 109 S.Ct. at 2799; and *Light Foundry, supra*, 112 B.R. at 137–38, it is clear, particularly after the Court's post-*Granfinanciera* decision in *Langenkemp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990), that, when a creditor presents a "claim" against the bankruptcy estate, that creditor triggers the process of allowance and disallowance of claims, thereby subjecting the creditor to the bankruptcy court's equitable powers and placing the parties' dispute into the arena of "public rights," *i.e.*, the public restructuring of debtor-creditor relations.

While the Court has thus clearly held that a creditor's filing of a formal proof of claim eliminates its right to a jury trial, it has not delineated whether any other type of a "claim" will result in invocation of

---

**1.** This pleading was erroneously filed in this court. It should be refiled by Ciccone in the District Court.

public rights and will similarly eviscerate that creditor's right to a jury trial. In several cases, lower courts have addressed the issue of whether the filing of a counterclaim by a defendant-creditor in a contested or adversary matter, as in the instant case, constitutes a relinquishment of the creditor's right to a jury trial because the creditor, in filing the counterclaim, is making a "claim" against the estate which represents the creditor's consent to the equitable powers of the bankruptcy court.

In *In re Concept Clubs, Inc.*, 154 B.R. 581 (D.Utah 1993), the court discussed and established a method for determining whether the assertion of a counterclaim in the form of a setoff constitutes the making of a "claim" which eliminates the creditor's right to a jury trial, per *Granfinanciera* and *Langenkemp*. The *Concept Clubs* court stated that, under 11 U.S.C. § 101(5) of the Bankruptcy Code, a "claim" against the debtor includes an assertion of any legal obligation against the debtor, no matter how remote or contingent. The Court found that "a setoff action is an enforceable obligation and, therefore, *may* constitute a claim against the bankruptcy estate." *Id.* To determine whether a setoff was a "claim," the court found that it must look to the nature of the setoff. The court concluded that

> an action for setoff raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial. By contrast, when setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial.

*Id.* at 589. Applying the test it had set forth, the court found that the creditor in the matter before it had not waived its right to a jury trial, since the setoff at issue was an affirmative defense seeking only to reduce the amount claimed against the creditor and did not therefore constitute a "claim" against the estate. *Cf. In re*

*Creative Conservation, Inc.*, 1991 WL 261706, slip op. at *2 (Bankr.E.D.Pa. Dec. 5, 1991); and *In re TM Carlton House Partners, Ltd.*, 93 B.R. 859, 870 (Bankr. E.D.Pa.1988) (a creditor can assert setoffs against debtor without violating the automatic stay, but asserting affirmative claims against a debtor is violative of the automatic stay and is properly relegated to the claims process).

In *In re Allied Companies, Inc.*, 137 B.R. 919, 924 (S.D.Ind.1991); *Bayless v. Crabtree*, 108 B.R. 299, 304–05 (W.D.Okla.1989), *aff'd*, 930 F.2d 32 (10th Cir.1991); and *In re Data Compass Corp.*, 92 B.R. 575, 577–78 (Bankr.E.D.N.Y.1988), the courts also discussed whether the filing of a compulsory counterclaim in a bankruptcy proceeding constitutes a consent to the court's equitable powers and thus eliminates that creditor's right to a jury trial. In *Data Compass, supra*, the court held, like the court in *Concept Clubs*, that, since the counterclaim in issue was compulsory, the creditor's assertion of that counterclaim did not adversely affect its right to a jury trial. In *Bayless, supra*, the court held that the counterclaim in issue was not compulsory, and therefore its assertion waived the creditor's right to a jury trial. In *Allied Companies, supra*, the court held that whether the counterclaim was compulsory or not, its assertion constituted an invocation of the bankruptcy court's equitable jurisdiction which eliminated the creditor's right to a jury trial.

The *Allied Companies* court therefore utilized a different analysis than the other cases cited. It based its result on its finding that *Granfinanciera* held that consent on the creditor's part was not determinative. 137 B.R. at 924. The court reasoned that *Granfinanciera* was not decided on the issue of waiver but on the mere fact that, compulsory and/or involuntary or not, the assertion of a counterclaim brought the creditor within the "public rights" sphere of restructuring the debtor-creditor relationship. *Id.* at 925. Thus, under the reasoning of this case, an assertion of *any* counterclaim by a creditor would eliminate its right to a jury trial.

The Third Circuit Court of Appeals has not addressed the issue of whether a creditor's filing of a counterclaim should be analyzed as an issue of consent to a bankruptcy court's equitable jurisdiction or as a potential waiver of a jury trial right. However, two decisions of that Court provide some guidance on this issue. In *Beard v. Braunstein*, 914 F.2d 434, 442 & n. 13 (3rd Cir.1990), the court found that a creditor's filing of what it concludes must have been a post-petition claim and thus was a compulsory counterclaim in response to a Chapter 7 trustee's complaint to recover prepetition and post-petition rental payments did not constitute the creditor's consent to the bankruptcy court's jurisdiction. *Id.* Thus, quoting 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d § 1416 at 125 (1990), the *Beard* Court stated that "the 'better rule ... is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim.'" *Id.* at 442.

In the other decision, *Travellers Int'l AG. v. Robinson*, 982 F.2d 96, 98–100 (3rd Cir.1992), *cert. denied sub nom. Travellers Int'l AG. v. Trans World Airlines, Inc.*, — U.S. ——, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993), the court held that filing a proof of claim waives a creditor's right to a jury trial even when the creditor purported to expressly reserve its right to a jury trial on its claim form. Despite the creditor's attempt to avoid this result, the court held that the filing of a claim necessarily resulted in a relinquishment of the creditor's right to a jury trial.

Also, we note that this court, in *In re Glen Eagle Square, Inc.*, 132 B.R. 106, 111–13 (Bankr.E.D.Pa.), *aff'd*, 132 B.R. 115 (E.D.Pa.1991), held that a creditor's filing of a proof of claim at any time, even *after* the commencement of a proceeding in which it sought a jury trial, precluded the creditor from obtaining a jury trial. In so holding, we criticized the decision in *In re New York City Shoes, Inc.*, 122 B.R. 668, 672–73 (E.D.Pa.1990), for failing to consider that a creditor's invocation of the claims process may irrevocably place its disputes with the debtor into the arena of public rights.

We believe that the decision in *Beard* is consistent with the reasoning of *Concept Clubs, Bayless,* and *Data Compass* in suggesting that only a creditor's voluntary act of asserting a non-compulsory counterclaim should waive a right to a jury trial in bankruptcy court. However, the reasoning of *Travellers Int'l* and *Glen Eagle Square* is more closely attuned to the reasoning of *Allied Companies,* suggesting that a creditor's mere act of filing a counterclaim, whether compulsory or not and whether voluntarily or involuntarily, places the creditor in the public rights arena where a jury trial right is eliminated.

█ Fortunately, we need not resolve this conflict to decide the issue before us. For, while Ciccone clearly would have no right to a jury trial under the *Allied Companies* approach, he also has waived his right to a jury trial under the approach utilized in *Concept Clubs, Bayless,* and *Data Compass.*

We find that Ciccone has waived his right to a jury trial, even under this latter analysis, because his Counterclaim seeks affirmative relief against the Debtor/Trustee. Similarly, Ciccone is not entitled to a jury trial under the reasoning set forth in *Beard* because it is clear that Ciccone's claims against the Debtor-estate arose pre-petition. In applying Federal Rule of Bankruptcy Procedure 7013, as in *Beard,* we observe that a creditor is not required to raise prepetition claims against the debtor as counterclaims. Rather, Ciccone could and should have raised his claims under the claims process in the SIPA case or the pertinent related Chapter 7 cases.

█ We recognize that the claims bar date in all of these cases has now run against Ciccone, and he can no longer raise the claims articulated in his Counterclaim through the claims process in either the SIPA case or the related Chapter 7 cases. His assertion of this Counterclaim may violate the automatic stay and may for that reason his Counterclaim may be stricken.

*See Creative Conservation, supra;* slip op. at *1; and *In re International Endoscope Manufacturers, Inc.,* 79 B.R. 620, 621–22 (Bankr.E.D.Pa.1987). Clearly, a creditor cannot hope to circumvent a bar date by raising claims subject to the bar date in a subsequent adversary proceeding. *See In re FRG, Inc.,* 121 B.R. 710, 714 (Bankr. E.D.Pa.1990). However, we find that a mere attempt to invoke this court's equitable "claims resolution" process through assertion of a non-compulsory counterclaim, whether successful or not, is a sufficient act on the part of a creditor to eliminate its right to a jury trial, because no such right exists in that process. *Cf. Commodity Future Trading Comm'n v. Schor,* 478 U.S. 833, 848–50, 106 S.Ct. 3245, 3255–56, 92 L.Ed.2d 675 (1986) (filing of a counterclaim in an administrative forum waives the right to a jury trial of the substance of the claim and counterclaim).

D.  CONCLUSION

On the basis of the foregoing analyses, this court must deny Ciccone's request for a jury trial. A trial of this entire proceeding will therefore be conducted before this court on September 9, 1993.

ORDER

AND NOW, this 27th day of July, 1993, upon consideration of the Briefs of the Plaintiff–Trustee and Defendant F. EMMET CICCONE ("Ciccone") filed pursuant to our Order of July 7, 1993, addressing the issue of whether Ciccone is entitled to a jury trial of any of the claims raised against him and by him in the above-entitled proceeding, it is hereby ORDERED as follows:

1. It is DETERMINED that Ciccone is not entitled to a jury trial of any of the claims and counterclaims relevant to him which were raised in this proceeding.

2. The trial of this entire proceeding will be conducted on THURSDAY, SEPTEMBER 9, 1993, AT 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.